**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0046n.06

**No. 09-2545**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
*Jan 09, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RICARDO ARIAS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| BLAINE LAFLER, WARDEN, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before: BATCHELDER, Chief Judge; GIBBONS, Circuit Judge; ROSENTHAL, District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Ricardo Arias, a Michigan inmate, appeals the denial of his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Following a jury trial in state court, Arias was convicted of possession of 650 grams or more of cocaine and sentenced to a term of life imprisonment. He argues that the admission of a confidential informant's statements to police at his trial violated his Sixth Amendment right to confrontation and was "contrary to" and involved an "unreasonable application" of clearly established federal law.

---

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

Because we find that Arias's claim is procedurally defaulted, precluding review on the merits by this court, we affirm the district court's denial of Arias's *habeas* petition.

**I.**

Arias was arrested during the course of the Pontiac, Michigan, police department's investigation of a Detroit drug trafficking operation that was transporting cocaine to Pontiac. A confidential informant ("CI") gave police physical descriptions of three men—"Pablo," "Cory," and "Ricky"—whom the CI said were involved with drug activity occurring at a residence at 816 Rademacher Street in Detroit.

The Michigan Court of Appeals described the events leading up to the arrest of Arias and his co-defendants, Pablo Bonilla and Cory Hudson, as follows:

> [P]olice . . . observed all three codefendants at the Detroit residence on February 6, 2002. Evidence was presented that the police observed the three defendants arrive at the residence in three separate vehicles the following day, February 7, 2002. Shortly thereafter, officers observed defendant, and codefendants Bonilla and Hudson come out of the house, and briefly converse in the street. Thereafter, codefendant Bonilla got into the passenger side of a pickup truck that defendant was driving. Codefendant Hudson removed a dark jacket from the car that he was previously driving, and walked over to a Taurus. The Taurus and pickup truck then left simultaneously, with the pickup truck in the lead, and continued to travel from Detroit to Pontiac in tandem for approximately an hour. There was testimony that the Taurus closely followed the pickup truck, including switching lanes only when the pickup truck did so. Additionally, there was testimony that, when the police stopped the Taurus, the pickup truck immediately "crossed three lanes," made a U-turn, slowly drove past where the Taurus was stopped, and then sped away, disregarding traffic laws. When the police stopped the Taurus, codefendant Bonilla was the sole rear-seat passenger. When the police removed codefendant Bonilla from the vehicle, he was sitting on a black jacket that was covering a "brick" of more than 916 grams of cocaine.[1]

---

[1]The district court correctly noted that the Michigan Court of Appeals misidentified Bonilla as the rear-seat passenger in the Taurus. Hudson was the passenger in the Taurus, which was driven

*People v. Arias*, No. 255428, 2006 WL 119143, at \*1 (Mich. Ct. App. 2006) (*per curiam*) (unpublished). Arias's and Bonilla's fingerprints were on packaging tape surrounding the brick of cocaine.

Arias was charged with possession with intent to deliver 650 or more grams of a controlled substance. At trial, the state called as its first witness Officer Jeremy Pittman. Pittman testified that during the police department's drug trafficking investigation, he developed suspects who he believed were "larger scale dealers" supplying mid-level dealers in Pontiac. The prosecutor asked Pittman to tell the jury who those suspects were. Pittman said: "I — I had suspects. I had first names. I had a first name of Cory, I had a first name of Pablo, and I had a first name of Ricky. And I had physical descriptions of each suspect." The prosecutor then asked Pittman to describe each suspect. Arias's co-defendants objected on hearsay and lack of foundation grounds, and the court instructed Pittman to "testify as to what he was looking for, a description of a person, period." Pittman testified that he believed "Ricky" to be "a short, thin, black male" who drove "a dark gray or black pickup truck with a cap on the back." The state later called as a witness Sergeant Michael Story, who testified that police "were looking for some individuals, an individual named Pablo Bonilla," eliciting objections from the three co-defendants. Story continued to testify that he was familiar with the names "Ricky and Cory" and that he had been provided with their basic physical descriptions.

Outside the presence of the jury, the co-defendants renewed their objections to the "hearsay about the drug dealing" and related testimony. The court found that the testimony was properly

---

by a woman identified only as "Ramirez." Bonilla was the passenger in the pickup truck driven by Arias.

admitted as background information. Arias argued that the testimony that the officers were part of a unit investigating drug offenses was prejudicial, and he requested a limiting instruction. The court responded that "some background has to be presented to the Jury, or otherwise the case doesn't make any sense at all."

During closing arguments, the prosecutor referenced Pittman and Story's testimony regarding the CI's statements. The prosecutor cautioned that although the CI's statements led police to suspect Arias and his co-defendants, "[b]eing a suspect doesn't make you a criminal." The prosecutor explained that the CI's statements were "not evidence at all of anyone's guilt," but they "place[d] in context" why police were monitoring the residence at 816 Rademacher. At the close of trial, the court instructed the jury that "the mere fact the Defendants may have been suspect is not evidence of their guilt."

On March 2, 2004, the jury convicted Arias of the lesser included offense of possession of 650 or more grams of cocaine. Arias objected to the officers' testimony in a motion for a new trial, arguing that the introduction of the CI's statements violated the Confrontation Clause, in light of the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004) — which was decided on March 8, 2004, six days after Arias's conviction — and the Sixth Circuit's decision in *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004). The trial court denied the motion at a hearing on January 19, 2005.

Arias appealed to the Michigan Court of Appeals on several grounds, including that the officers' testimony regarding the CI's statements was based on impermissible hearsay and violated Arias's right to confrontation under *Crawford*. The majority of the court found that the CI's

statements were not hearsay and concluded that, because Arias did not properly preserve his Confrontation Clause challenge by objecting on this ground at trial, his claim was reviewable only for plain error. The majority found that even if the CI's statements were hearsay, thereby triggering the Confrontation Clause, their admission was harmless. Judge Cooper, concurring in part and dissenting in part, argued that the majority should not have denied Arias full review of his claim because *Crawford* had not been decided at the time of Arias's trial and a specific objection would have been futile under the then-prevailing standard for the admissibility of hearsay statements under the Confrontation Clause set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). Judge Cooper also believed that introduction of some of the CI's statements violated Arias's right to confrontation, but she agreed with the majority that any error was harmless. The court affirmed Arias's conviction and sentence on January 17, 2006. Arias applied for leave to appeal to the Michigan Supreme Court, which denied his application on September 27, 2006, because it was "not persuaded that the questions presented should be reviewed by this court." *People v. Arias*, 721 N.W.2d 585 (2006).

Arias filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of Michigan on December 26, 2007, raising the Confrontation Clause issue, among other claims. The district court considered the issue on the merits and found that the facts of Arias's case were "virtually indistinguishable" from the facts in *Cromer* and subsequent cases where the Sixth Circuit found that the introduction of statements by CIs violated the Confrontation Clause under *Crawford*. However, the district court did not decide the "difficult question" of whether the Michigan Court of Appeals's decision was an objectively unreasonable application of *Crawford*, because any error was harmless. The district court denied Arias's petition.

Arias moved for a certificate of appealability ("COA") on the issues raised in his petition. The district court denied his request. On March 23, 2011, this court issued a COA "with regard to Arias's claim that he was denied his right to confrontation by the introduction of informant testimony" but denied his application in all other respects.

## II.

We review a district court's legal conclusions in a § 2254 *habeas* action *de novo*. *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008). In cases where the district court has made factual determinations based on its review of trial transcripts and other court records, we review the district court's factual conclusions *de novo*. *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006). We may affirm a district court's denial of a *habeas* petition even if we rely on different grounds than the district court. *See Kyger v. Carlton*, 146 F.3d 374, 375 (6th Cir. 1998).

## A.

The state argues that Arias's Confrontation Clause claim is procedurally defaulted, barring federal *habeas* review. Arias responds that the state failed to develop this argument before the district court, thereby waiving this defense. In its response to Arias's *habeas* petition, the state asserted "any and all available defenses including . . . procedural default for each claim to which it is applicable" and then addressed Arias's Confrontation Clause claim on the merits.

Procedural default is normally "a defense 'that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter.'" *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal quotation marks omitted)). Procedural default is not a jurisdictional matter, and we need not raise the issue *sua sponte*. *Id.* (citing

*Trest*, 522 U.S. at 89). Nonetheless, the fact "[t]hat the [state] failed to argue procedural default in the district court does not entitle a habeas petitioner to a merits-based review of his claim." *Palmer v. Bagley*, 330 F. App'x 92, 101 (6th Cir. 2009) (citing *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000)). We may choose to consider procedural default arguments even when they are raised for the first time on appeal. *See, e.g.*, *United States v. Busch*, 411 F. App'x 872, 874-75 (6th Cir. 2011); *Palmer*, 330 F. App'x at 101; *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).

Even if Arias is correct that the state waived its procedural default defense, we have discretion to consider the state's argument on appeal. One of the main concerns with considering a procedural default argument on appeal is whether the petitioner had an opportunity to respond, so that he does not suffer a disadvantage. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (noting that "[t]he main concern with raising procedural default sua sponte is that a petitioner not be disadvantaged without having had an opportunity to respond" (citation omitted)). Even though the parties did not address procedural default before the district court, Arias had an opportunity to respond to the state's procedural default argument in the reply brief that Arias submitted to this court. "[G]iven that Petitioner was aware of the issue, and in the interest of comity, federalism, and judicial efficiency, we think it appropriate to determine whether Petitioner has procedurally defaulted on his claims." *Id.* at 477 (internal quotation marks and citations omitted).

## B.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Default may occur "due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).

> We apply a four-part test to determine whether a claim is procedurally defaulted:
>
> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule . . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim . . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The first inquiry is whether Arias complied with Michigan's contemporaneous objection rule. The rule states: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Mich. R. Evid. 103(a). Michigan courts "have long recognized that, in general, an issue is not properly preserved for appeal if it is not raised before the trial court." *People v. Bauder*, 712 N.W.2d 506, 510 (Mich. Ct. App. 2005) (citing *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994)).

They also have recognized that "[b]ecause the grounds for objection at trial and the grounds raised on appeal must be the same, an objection based on the rules of evidence will not necessarily preserve for appeal a Confrontation Clause objection." *Id.* (citing *People v. Coy*, 669 N.W.2d 831, 839 (Mich. 2003)). At trial, Arias objected to the officers' testimony regarding the CI's statements on the grounds that it was hearsay and prejudicial to the defense. Arias contends that he made a "good faith" effort to comply with the contemporaneous objection rule, even though he did not specifically cite the Confrontation Clause, but Arias does not demonstrate that "good faith" is enough to satisfy Michigan's rule. Arias failed to comply with Michigan's contemporaneous objection rule, and, therefore, the first prong of the procedural default test is met.

The second inquiry is whether the Michigan courts enforced the procedural sanction. "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). This court has recognized that "[p]lain error analysis . . . is not equivalent to a review of the merits," and plain error review enforces rather than waives procedural default rules. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Hinkle*, 271 F.3d at 244 (characterizing plain error review as the enforcement of a procedural default). The Michigan Court of Appeals, the last state court to issue a reasoned opinion reviewing Arias's Confrontation Clause claim, found that because Arias objected on the basis of hearsay alone at trial, his Confrontation Clause claim was not properly preserved. It reviewed Arias's claim only for plain error. Therefore, the court enforced the procedural sanction.

The third inquiry is whether the procedural bar is an "adequate and independent" state ground foreclosing review of Arias's claim. The adequate and independent state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004) (citation omitted)). This court has recognized that the contemporaneous objection rule is regularly followed in Michigan. *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citing *Draper v. Adams*, No. 98-1616, 2000 WL 712376, at *9 (6th Cir. 2000) (unpublished table decision)).

Arias argues that the Michigan Court of Appeals did not "clearly and expressly" state that it relied on the procedural bar. Following the Supreme Court's decision in *Harris v. Reed*, 489 U.S. 255 (1989), federal courts on *habeas* review "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 734-35 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). The Supreme Court has emphasized that "[a] predicate to the application of the *Harris* presumption is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." *Coleman*, 501 U.S. at 735; *Simpson*, 238 F.2d at 407-08 (noting that because the *Harris* presumption only applies when a state court judgment appears

to rely on federal law and the state court did not rely on federal law, it did not need to "clearly and expressly" state that its judgment was based on a state procedural rule to bar federal *habeas* review).

Because the Michigan Court of Appeals's judgment did not rest on and was not interwoven with federal law, the *Harris* presumption does not apply. The Michigan Court of Appeals addressed Arias's Confrontation Clause claim during its discussion of Arias's hearsay objections. First, it stated that *Crawford* was not implicated because the CI's statements were not hearsay. The court explained that the CI's statements were offered merely as background information for the limited purpose of explaining the officers' actions, not to prove the truth of the matter asserted ("that the defendants were drug dealers"). Second, the court found that because Arias objected on the basis of hearsay alone at trial, his Confrontation Clause claim was not properly preserved. The court then reviewed the claim for "plain error affecting defendant's substantial rights." Although the court mentioned *Crawford* during the first part of its discussion, its analysis addressed Arias's hearsay objections. The court did not reach the merits of the federal claim because it determined that the threshold requirement for a Confrontation Clause violation—the presence of hearsay under state-law evidence rules—was not met. Thus, the court's decision did not rest on federal law. The court was not required to make a clear and express statement of the ground for its decision in order to preclude federal *habeas* review. The procedural bar provides an adequate and independent ground for the decision.

Because Arias failed to comply with a state procedural rule constituting an adequate and independent state ground for the state court's decision, review of his Confrontation Clause claim is barred unless he can "demonstrate . . . that there was cause for him not to follow the procedural rule

and that he was actually prejudiced by the alleged constitutional error." *Stone*, 644 F.3d at 346

(quoting *Maupin*, 785 F.2d at 138).

"[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that

some objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Arias argues that he has "cause" for

failing to object at trial under the Confrontation Clause because *Crawford* was decided after Arias's

trial, and he could not have raised a meaningful objection at trial under *Ohio v. Roberts*, 448 U.S. 56

(1980). We find it unnecessary to decide whether Arias can establish "cause" for failing to properly

object, because Arias cannot demonstrate "actual prejudice" as a result of the alleged violation of his

right to confrontation. *See Scott v. Elo*, 302 F.3d 598, 605 (6th Cir. 2002) (finding that the

petitioner's claim was procedurally defaulted because, even if "cause" were established, the petitioner

could not demonstrate actual prejudice).

Actual prejudice differs from the "mere possibility of prejudice." *Maupin*, 785 F.2d at 139

(citing *United States v. Frady*, 456 U.S. 152, 170 (1982); *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

"[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence

of a petitioner's guilt and a lack of evidence to support his claim." *Rust v. Zent*, 17 F.3d 155, 161-62

(6th Cir. 1994) (citing *Frady*, 456 U.S. at 172).

The state presented strong evidence of Arias's guilt at trial:

Officers witnessed the codefendants traveling from a suspected drug house toward the
city of Pontiac in two vehicles. When a marked police unit pulled one vehicle over,
the other vehicle made a U-turn and drove away at a high rate of speed while weaving
in and out of traffic. Officers found Mr. Hudson sitting on a package containing one

kilogram of cocaine. Forensic scientists subsequently discovered fingerprints belonging to both defendant and Mr. Bonilla on the tape used to seal that package.

*Arias*, 2006 WL 119143, at *17 (Cooper, J., concurring in part and dissenting in part).

The district court correctly observed:

> Thus, even without the testimony that petitioner was involved in drug activity at the Detroit house, the jury would have had before it evidence that petitioner was at a suspected drug house with two other people, left with them in two separate cars which mirrored each other's movements, and fled the area when the other car was pulled over, showing a concert of action by all three of the codefendants. The evidence before the jury would also have shown that cocaine was found in the other car, and that petitioner's fingerprint was on the packaging. This evidence would have been more than sufficient for the jury to conclude that petitioner had actually or constructively possessed the cocaine . . . .

*Arias v. Lafler*, No. 07-15465, 2009 WL 3818155, at *9 (E.D. Mich. 2009) (unpublished).

Arias contends that the CI's statements were "highly inculpatory," because they identified him by his nickname, described his physical features and pickup truck, and characterized him as a cocaine dealer. He argues that the introduction of the CI's statements at the beginning of trial and the repetition of the statements during trial shaped the jurors' perception of him and conditioned the jurors to accept weak, circumstantial evidence of his guilt. First, even though much of the evidence presented against Arias was circumstantial, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)). If the jurors found that the other evidence offered against Arias was unpersuasive, it is unlikely that the CI's statements would have led them to find Arias guilty. Second, even the prosecutor noted at trial that the CI's statements were "not evidence at all of anyone's guilt," but they simply "place[d]

in context" why police were monitoring the residence where officers observed Arias and his co-defendants. Third, the trial court instructed the jury that "the mere fact the Defendants may have been suspect is not evidence of their guilt." For these reasons, Arias cannot demonstrate that he suffered "actual prejudice" as a result of the introduction of the CI's statements. At most, he can only demonstrate a "mere possibility of prejudice." His claim is procedurally defaulted, and we will not consider it.

Finally, Arias argues that the Supreme Court has recognized that even if a claim is procedurally defaulted, a federal *habeas* court may consider it if failure to do so "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, the "fundamental miscarriage of justice" exception applies only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence must be supported with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Arias concedes that he has no new evidence to offer. Thus, he cannot meet this exception and is not entitled to review of his claim on the merits.

**III.**

We find that Arias's claim that his Sixth Amendment right to confrontation was violated is procedurally defaulted. For this reason, we decline to review the merits of his claim. We affirm the district court's denial of Arias's *habeas* petition.