RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

RICHARD STANTON WHITMAN,

                *Petitioner-Appellant*,

    *v.*

DAVID GRAY, Warden,

                *Respondent-Appellee*.

No. 21-3858

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:19-cv-01818—James S. Gwin, District Judge.

Argued: January 24, 2024

Decided and Filed: June 10, 2024

Before: GRIFFIN, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Cody L. Reaves, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. William H. Lamb, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Cody L. Reaves, Cody M. Akins, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. William H. Lamb, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cincinnati, Ohio, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. In state court, Richard Whitman stood trial for the shooting death of David Eadie. The trial court instructed the jury on self-defense but did not provide Whitman's requested instruction on the castle doctrine. A jury convicted Whitman. Finding no relief on direct appeal, Whitman turned to federal habeas proceedings. The federal

constitutional issue Whitman asks us to resolve in his favor, however, was not properly preserved in state court and is now barred from further review there. On that basis, Whitman has procedurally defaulted his claim. We thus affirm the district court's judgment in the warden's favor.

I.

One afternoon, David Eadie went to the home of his ex-girlfriend. There, he encountered her brother, Richard Whitman, who was staying at the home. Before long, Eadie and Whitman engaged in a verbal and physical altercation, at which point Whitman separated himself and moved to a bedroom upstairs. When Eadie later approached the bedroom, Whitman fired three shots, killing Eadie.

An Ohio grand jury indicted Whitman for murder and unlawful possession of a firearm. A key dispute at trial was whether Whitman acted in self-defense. In Ohio, self-defense is an affirmative defense to be proven by a preponderance of the evidence. *See* O.R.C. § 2901.05(A) (2018). The trial court instructed the jury on the elements of self-defense. Whitman also requested a so-called castle doctrine instruction. *See State v. Jones*, 195 N.E.3d 561, 567 (Ohio Ct. App. 2022) (explaining that the "castle doctrine" alters the defense of self-defense, identifying circumstances under which a person has no duty to retreat). Had Whitman's request been honored, the jury would have been told that a person who is lawfully in that person's residence has no duty to retreat before using force in self-defense. R.8-1, PageID 227–28; *see* O.R.C. § 2901.09(B) (2018). The trial court denied Whitman's request. Following deliberations, a jury convicted Whitman of one count of murder with a firearm specification and one count of having weapons while under a disability. He was sentenced to a prison term of 21 years to life.

Whitman appealed his conviction to the Ohio Court of Appeals. There, he argued that the trial court erred as a matter of Ohio law by failing to instruct the jury on the castle doctrine. The state confessed error. The appeals court, however, held that any error did not affect Whitman's substantial rights and thus upheld his conviction. *See State v. Whitman*, 2018-Ohio-2924, 2018 WL 3578464, at *8 (Ohio Ct. App. July 23, 2018) (citing Ohio Crim. R. 52(A)).

Whitman sought leave to appeal to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Whitman argued for the first time that the trial court's error violated his federal due process right to a complete defense. The Ohio Supreme Court denied discretionary review. *State v. Whitman*, 111 N.E.3d 21 (Ohio 2018) (unpublished table decision).

From there, Whitman turned to federal court, petitioning for a writ of habeas corpus. *See* 28 U.S.C. § 2254. His petition presented ten grounds for relief. Relevant here is Whitman's claim that the state court's denial of the castle doctrine instruction violated his federal due process rights. On that issue, the warden argued that the failure to give Whitman's proposed instruction was merely an error of state law that is not cognizable on federal habeas review. In the alternative, the warden argued that the state court's harmlessness analysis was not unreasonable under the Antiterrorism and Effective Death Penalty Act of 1996 (or AEDPA). *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000))).

A magistrate judge recommended denying Whitman's petition, and the district court agreed. With respect to the castle doctrine issue, the district court deemed it "a quintessential state law question," holding that "the trial court's decision is not a due process violation." The district court, however, issued a certificate of appealability for that claim, resulting in this appeal.

## II.

A. At its core, AEDPA reflects a respect for states as separate sovereigns enforcing their criminal law. This understanding is revealed by the deferential standard federal courts employ when reviewing claims adjudicated on the merits by state courts. So too by AEDPA's threshold requirements for granting habeas relief. One familiar requirement is that a state prisoner's "application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A "properly exhausted" claim, in turn, is one that was "fairly presented to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (quotation omitted).

To satisfy the presentation requirement, the petitioner must have argued the claim's factual and legal basis at each level of the state court system. *Id.* at 414–15.

"[A]n important 'corollary' to the exhaustion requirement," emanating from court precedent, is the doctrine of procedural default. *Davila v. Davis*, 582 U.S. 521, 527 (2017) (citation omitted). As in the federal system, states may impose procedural rules that limit the availability of state court remedies. *See, e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) (deadlines for appellate review). If a habeas petitioner fails to comply with such a rule in state court, the claims may be procedurally defaulted. *Id.* We consider a claim procedurally defaulted where (1) there is a state procedural rule that is applicable to the claim, (2) the petitioner failed to comply with the rule, (3) the state courts routinely enforce the rule, and (4) the rule is an "adequate and independent" state ground foreclosing review of a federal constitutional claim. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (quoting *Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010)). Together, these statutory and common law doctrines, emanating from principles of "federalism and comity," help to "ensure[] . . . the States' interest in correcting their own mistakes" in the first instance. *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997) (cleaned up).

Whitman procedurally defaulted his federal due process claim. Both parties agree that Whitman never properly argued the merits of his due process claim in state court. Before the Ohio Court of Appeals, Whitman raised the trial court's failure to use his requested castle doctrine instruction when instructing the jury. But he did so on the basis that the jury instructions violated Ohio law, citing state law only. And Ohio law requires that "claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings." *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *see also Hand v. Houk*, 871 F.3d 390, 408 (6th Cir. 2017). By failing to make his due process argument before the Ohio Court of Appeals, Whitman is barred from asserting it in future proceedings by res judicata. True, Whitman made a due process argument in his jurisdictional memorandum filed with the Ohio Supreme Court. But that court never considered the issue. Instead, it denied discretionary review, "declin[ing] to accept jurisdiction of the appeal." In the end, no state court adjudicated, or can ever adjudicate, the merits of Whitman's due process claims. *See Brown v. Davenport*,

596 U.S. 118, 142 (2022) (explaining that discretionary denial of leave to appeal is not an "adjudication" of the underlying claim's "merits" under AEDPA). Accordingly, the first two components of the procedural default standard are satisfied.

The two remaining procedural default elements are likewise satisfied. One, Ohio courts customarily enforce res judicata. *See Gerth v. Warden*, 938 F.3d 821, 830 (6th Cir. 2019). Two, the rule is an adequate and independent state ground to foreclose review. *Id.* All things considered, Whitman procedurally defaulted his due process claim. And he does not argue that he can satisfy the cause and prejudice standard which might otherwise overcome the default. *See Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022).

B. Recognizing his own shortcomings, Whitman responds that the warden likewise stumbled. Before the district court, Whitman notes, the warden never argued that Whitman's due process claim was procedurally defaulted due to his failures in state court. In that respect, the warden forfeited the argument. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) ("A forfeiture occurs when a party fails to timely assert a claim, even if the party does so unintentionally (say, because the party failed to think of the claim until too late)."). Although the warden now asserts procedural default, counsel conceded at oral argument that the state made "a mistake[]" by not raising in district court Whitman's procedural default of the due process claim.

We do not condone the warden's inconsistent approach. That said, in the habeas setting, we are not bound by the state's litigation decisions. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) ("[W]e are not required to review the merits of defaulted claims simply because the Government has failed to raise the issue."); *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005) ("[Courts of appeal] are nonetheless permitted to consider the procedural default issue even when raised for the first time on appeal if [they] so choose."); *see also* Federal Habeas Manual § 9B:92 (West 2023) (compiling cases in which courts of appeal weighed whether to permit the defense of procedural default raised for the first time on appeal). Because federal courts are empowered to raise procedural default sua sponte—in plain English, where no party raises the issue—*see Elzy*, 205 F.3d at 886, it follows they likewise can do so if procedural default was raised on appeal, even if forfeited in the district court, *see Wood v. Milyard*, 566 U.S.

No. 21-3858                                   *Whitman v. Gray*                                   Page 6

463, 471 (2012) ("[T]he bar to court of appeals' consideration of a forfeited habeas defense is not absolute."); *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (citing *Elzy*, 205 F.3d at 886).

Numerous considerations justify enforcing Whitman's procedural default. Consider the many institutional interests underlying AEDPA's review framework. *See Wood*, 566 U.S. at 473; *Day v. McDonough*, 547 U.S. 198, 205–06 (2006). They include "comity," "respectful, harmonious relations between the state and federal judiciaries," "judicial efficiency and conservation of judicial resources," "safeguard[ing] the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh," and "finality to state court judgments within a reasonable time." *Wood*, 566 U.S. at 471–72 (cleaned up). These interests inspired the concept of procedural default, which is "premised on the idea that state courts should have the first pass at remedying any violation of a state prisoner's federal constitutional rights." *Pollini v. Robey*, 981 F.3d 486, 498 (6th Cir. 2020). State courts deserve a meaningful opportunity to consider and, if necessary, correct an error in state criminal matters without federal interference. *See Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). States likewise enjoy the right to impose rules to ensure that federal claims are timely—and properly—presented in their courts. *See Coleman v. Thompson*, 501 U.S. 722, 740–41, 745 (1991). It follows that in subsequent habeas proceedings, we "safeguard the States' interest in the integrity of their criminal and collateral proceedings." *Williams*, 529 U.S. at 436. Yet here, Whitman frustrated these aims by failing to present his due process argument to the Ohio Court of Appeals. He now asks us to assess the due process implications of the state court's jury instruction without the benefit of the state court's analysis of the issue. And he does so at this late stage, when the issue could have been dealt with numerous proceedings ago. In view of the considerable preservation, judicial economy, and comity interests at play, even with the warden's failure to raise Whitman's procedural default of his due process claim, we decline to recognize the claim as cognizable. *Cf. Granberry v. Greer*, 481 U.S. 129, 133 (1987) (recognizing that the interests of justice govern whether courts can forgive forfeiture of an exhaustion argument). These interests, it bears emphasizing, reach beyond just the state in its role as a litigant. Rather, they extend to the broader interests of the courts and their proper operation. We need not penalize the Ohio state court system solely due to a state lawyer's mistake in federal district court. Equally true, as

federal courts, we are reluctant to reach a constitutional question unnecessarily that is otherwise foreclosed by a state procedural bar.

Any other result, it bears noting, would allow Whitman to benefit from his own error. AEDPA requires deference to the state court's application of federal law if "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (cleaned up). At the same time, when a state court has not adjudicated the merits of a claim, AEDPA's deferential standard of review does not apply. *See Hughbanks v. Hudson*, 2 F.4th 527, 535 (6th Cir. 2021) (citing *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006)). If we failed to enforce Whitman's procedural default of his due process claim, we would apply de novo review in considering the issue, a seeming windfall to Whitman. After all, the reason we lack a merits opinion to which we normally afford deference is Whitman's failure to ask the court of appeals to address the matter. *See Woodford v. Visciotti*, 537 U.S. 19, 24–25, 27 (2002) (per curiam).

Whitman's counterarguments do not convince us otherwise. He first directs us to *Maslonka v. Hoffner*, 900 F.3d 269, 276–77 (6th Cir. 2018), which allowed defaulted habeas claims to move forward due to the state's failure to raise the default. But in *Maslonka*, "the state explicitly and deliberately waived" its procedural default argument in its initial answer. *Id.* at 276 (quoting the state's answer, "in any case, the State is not arguing that any of Maslonka's habeas claims are barred by procedural default"). Not so here, where the warden simply forfeited the opportunity to contest Whitman's procedural default. *See, e.g.*, *Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669, 677–78 (6th Cir. 2018) (explaining that waiver, unlike forfeiture, typically cannot be forgiven). We have discretion whether to consider a forfeited procedural default argument. In this instance, the notable interests entwined in AEDPA weigh in favor of doing so.

Nor do we see any disadvantage to Whitman caused by the state's inaction. Whitman had an opportunity to address the default issue. *Arias v. Lafler*, 511 F. App'x 440, 444 (6th Cir. 2013) (citing *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005)). In fact, he highlighted the issue in his opening brief on appeal and raised it again in his reply. As in *Arias*, where the prisoner was able to respond to the state's procedural default argument in his reply, one reason

why we reached the procedural default question, *id.*, here too there was no evidence of gamesmanship by the state.  And, as already explained, there are good reasons to enforce the doctrine of procedural default in this instance.

\*　　\*　　\*　　\*　　\*

The judgment is affirmed.