RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NICHOLAS MASLONKA,

*Petitioner-Appellee*,

*v.*

BONITA J. HOFFNER, Warden,

*Respondent-Appellant*.

┐
│
│
│
├  No. 17-1834
│
│
│
┘

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-14110—Arthur J. Tarnow, District Judge.

Argued: April 26, 2018

Decided and Filed: August 14, 2018

Before: BATCHELDER, McKEAGUE, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Scott R. Shimkus, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellant. Jessica Lefort, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Scott R. Shimkus, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellant. Jessica Lefort, Andrew N. Wise, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

ALICE M. BATCHELDER, Circuit Judge. After Nicholas Maslonka robbed two banks to obtain money to support his drug habit, he pleaded guilty in Michigan state court to armed robbery as a third habitual offender. During his plea-negotiation process, in an attempt to secure

a better plea deal, Maslonka began to cooperate with federal authorities in a separate federal investigation. But when Maslonka did not cooperate to the full satisfaction of the federal authorities, the state prosecutor withdrew the favorable plea offer. Maslonka blames this on his state-appointed trial counsel, and brought this habeas corpus petition alleging that, among other things, his trial counsel rendered constitutionally ineffective assistance during the state plea negotiations. The district court agreed and granted Maslonka's petition. But we disagree. Even assuming Maslonka's trial counsel was constitutionally deficient, Maslonka has not shown that this deficiency prejudiced him. We therefore **REVERSE** and **REMAND** for the district court to address only Maslonka's remaining ineffective-assistance-of-appellate-counsel claims.

**I.**

Nicholas Maslonka is a Michigan state prisoner currently serving a sentence of fifteen to twenty-five years' imprisonment for armed robbery under Michigan Compiled Laws § 750.529 as a third habitual offender. This conviction arose from a December, 2008, armed bank robbery in which Maslonka, a heavy heroin user at the time, entered a bank in St. Clair Shores, MI, and told a teller that he had a gun and needed money. After the teller gave him money, Maslonka left. Maslonka was arrested and initially charged with armed robbery as a fourth habitual offender.

Days later, and before the state had even appointed an attorney for Maslonka, a state detective approached Maslonka about cooperating with federal Drug Enforcement Agency ("DEA") agents in a federal drug-trafficking investigation. *Maslonka v. Hoffner*, No. 2:13-CV-14110, 2017 WL 2666103, at *1 (E.D. Mich. June 21, 2017). In exchange, Maslonka would receive some consideration from the state. Although the details of this consideration were initially fuzzy, the state prosecutor eventually made his "best offer" to Maslonka in open court: in exchange for Maslonka's "very best of cooperation," the state would dismiss Maslonka's fourth-habitual-offender charge outright, resulting in a state guidelines range of 81 to 135 months' imprisonment. *See id.* at *2. Privately, the state prosecutor told Maslonka's counsel that he would recommend a prison sentence at the low end of the state guidelines range. The state prosecutor could not offer any formal sentencing agreement, however, because the state judge overseeing Maslonka's case always adamantly refused to enter into any sentencing

agreements with parties. Maslonka's "very best of cooperation" would have to include, at minimum, testifying before a federal grand jury in the federal drug trafficking case, if not also at a subsequent federal trial. *See id.* Maslonka understood this and agreed to testify before the grand jury. At no point, however, did either the federal or state authorities provide written details of the cooperation they expected from Maslonka, and at no point did Maslonka's counsel ask either state or federal authorities for a written cooperation agreement. *See id.* at *11. Maslonka's counsel apparently also never asked for Maslonka's cooperation to be limited to providing information about only some individuals, never sought additional details about what federal or state authorities expected from Maslonka beyond his grand jury testimony, and did not advise Maslonka about what was expected from him other than telling Maslonka to "cooperate to the best of his ability." *See id.*; *id.* at *9.

As the state proceedings progressed, Maslonka had several meetings with DEA agents, and eventually with an Assistant United States Attorney ("AUSA") or two. The first of these meetings happened days after Maslonka's arrest, and before Maslonka first met with his state-appointed counsel. *See id.* at *1. Even after Maslonka had been appointed counsel, the federal authorities came to the jail on multiple occasions without giving Maslonka or his counsel notice. But Maslonka claims that during his third meeting with federal authorities they told him that his counsel had given them permission to proceed without her. Regardless, Maslonka's counsel did not attend any of these meetings between Maslonka and the federal authorities. *See id.* at *6.

When it came time for Maslonka to testify before the federal grand jury, his counsel was once again not present. *See id.* at *3. An AUSA and the DEA agents met with Maslonka for a preparation session immediately before his scheduled testimony. *See id.* Maslonka and the federal authorities would later tell different stories about what happened during that preparation session. Maslonka claimed that the DEA agents began to ask him questions about his close friends and family and that he refused to provide any information about them to the federal authorities because he believed that his agreement to cooperate required only that he testify about three particular drug traffickers. According to Maslonka, when he would not provide this information about his close friends and family, the federal authorities became angry and did not allow Maslonka to testify before the grand jury. According to the federal authorities, Maslonka

"changed his story," "became very belligerent" and "hostile," and did not want to testify before the grand jury. In any event, Maslonka ultimately did not testify before the grand jury. *See id.*

When the state prosecutor learned that Maslonka had not cooperated to the satisfaction of the federal authorities, he rescinded his offer to dismiss Maslonka's fourth-habitual-offender charge. *See id.* Instead, the state prosecutor made an offer that he had planned to make before he learned about Maslonka's potential federal cooperation. Under this less-favorable offer, the state prosecutor would reduce Maslonka's habitual-offender charge from a fourth-habitual-offender charge to a third-habitual-offender charge.

Maslonka pleaded guilty to armed robbery under Michigan Compiled Laws § 750.529 as a third habitual offender. The resulting estimated state guidelines range was 108 to 270 months' imprisonment. While entering his plea, Maslonka testified that he was satisfied with his counsel's advice and services. Maslonka later testified that during this court appearance, his counsel had a sidebar conversation with the judge about his attempted cooperation, but that the judge said that Maslonka would "g[e]t nothing for [his] cooperation."

At sentencing, the state asked that Maslonka's sentence be "as lengthy as possible." Maslonka's counsel asked the judge to "go below the guidelines" because Maslonka had "hurt no one but himself" and argued that his crimes were merely "crimes against property" to obtain drugs to satisfy his addiction. Maslonka's counsel did not, however, ask the judge for a downward variance based on Maslonka's attempted cooperation, even though Maslonka claims she promised to do so.

Maslonka unsuccessfully challenged his plea and sentence through both direct appeals and state collateral proceedings. *See id.* Maslonka first raised his ineffective-assistance-of-trial-counsel claims in his second motion for relief from judgment. *See id.* at *5. The Michigan Court of Appeals dismissed this as an impermissible successive motion for relief from judgment. *See id.* at *3.

Maslonka then filed a pro se 28 U.S.C. § 2254 habeas corpus petition in the district court. *See id.* Altogether, Maslonka's petition and supporting affidavit, memorandum, and exhibits spanned over 1300 pages. The district court ordered the state to file a response, and the state

filed an answer in which it attempted to summarize and categorize Maslonka's claims.  Three years later, the district court appointed counsel to represent Maslonka in this habeas proceeding, and each side submitted supplemental briefs.  *See id.*  The district court then ordered an evidentiary hearing on Maslonka's ineffective-assistance-of-trial-counsel claims, in which Maslonka, his counsel, the state prosecutor, two DEA agents, and an AUSA testified.  *See id.* at *3–4.  Afterwards, the parties filed supplemental briefs.  *See id.*  The district court ultimately granted Maslonka's habeas corpus petition, and the state appealed.

## II.

### A.

The state first argues that Maslonka procedurally defaulted his ineffective-assistance-of-trial-counsel claims.  "[A] federal court may not review federal claims that were procedurally defaulted in state courts."  *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).  This "fundamental tenet[] of federal review of state convictions," *id.*, ensures that federal courts show the respect to "the States and the States' procedural rules" that our federalist system requires, *Shorter v. Ohio Dep't of Rehab. and Corr.*, 180 F.3d 723, 725 (6th Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 726 (1991)).  "A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default."  *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (citation omitted).

It seems clear to us that Maslonka did procedurally default his ineffective-assistance-of-trial-counsel claims.  Maslonka failed to comply with a state procedural rule when he filed a second motion for relief from judgment that was not based on a retroactive change in law that occurred after his motion for relief from judgment.  *See* M.C.R. 6.502(G)(1).  The state courts enforced that rule against Maslonka, and we have held that Michigan Court Rule 6.502(G) "acts as an adequate and independent state ground for denying review sufficient to procedurally default a claim."  *Ingram v. Prelesnik*, 730 F. App'x 304, 311 (6th Cir. 2018) (citing *Morse v. Trippett*, 37 F. App'x 96, 106 (6th Cir. 2002)).

But as Maslonka points out, the state explicitly and deliberately waived this argument in its initial answer to Maslonka's habeas petition. In its answer, the state said that although "it is difficult to discern the full course of all of Maslonka's claims," "in any case, the State is not arguing that any of Maslonka's habeas claims are barred by procedural default." Although the state now argues that it "did not clearly recognize the claims being raised" at the time, this is belied by the state's initial answer, in which the state summarized its understanding of Maslonka's claims. The state said it understood Maslonka's claims to fall into several "basic categories," including that "Maslonka was without counsel during critical stages of his attempts at cooperation with DEA agents as part of an alleged plea deal" and that "Maslonka was denied the effective assistance of counsel during plea negotiations, rendering his plea invalid." Despite understanding Maslonka's claims, the state nevertheless explicitly and deliberately waived its procedural-default defense.

We will not override the state's waiver, because to do so would be an abuse of discretion.[1] *Wood v. Millyard*, 566 U.S. 463, 472–73 (2012). After all, procedural default "is not a jurisdictional matter" and the state is therefore normally "obligated to raise and preserve" any procedural-default defense "if it is not to lose the right to assert the defense thereafter." *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal quotation marks, citation, and alteration omitted); *see Gumm v. Mitchell*, 775 F.3d 345, 376–77 (6th Cir. 2014). Although the Supreme Court has not absolutely barred us from considering sua sponte a *forfeited* habeas defense, it has said that we may not "depart from the principle of party representation basic to our adversary system" by considering a *waived* habeas defense. *See Wood*, 566 U.S. at 472. We must therefore consider Maslonka's ineffective-assistance-of-trial-counsel claims on the merits.

---

[1]We recognize that this is not a normal waiver case, because the state did attempt to raise its procedural-default defense in a supplemental brief after the district court appointed counsel to represent Maslonka in his federal habeas proceedings. And it may seem unfair to hold the state to its initial briefing even though the district court allowed Maslonka a second round of supplemental briefing. But the state could have sought leave from the district court to amend its answer, and it did not do so. *See Day v. McDonough*, 547 U.S. 198, 208–09 (2006). As it is, we are faced with the state's explicit and deliberate waiver of its procedural-default defense, and we may not override that waiver, despite the state's change of heart. On remand, should the state wish to assert a previously waived procedural defense, it should seek leave from the district court to amend its answer. *See id.*

**B.**

Before analyzing the merits, however, we must determine the appropriate standard of review in this case.  The parties dispute whether the state court that denied Maslonka's second motion for relief from judgment adjudicated his ineffective-assistance-of-trial-counsel claims on the merits or whether it merely enforced a procedural bar against Maslonka.

Where state courts do not reach the merits of a habeas petitioner's claim, federal habeas review is not subject to the deferential standards set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (citing 28 U.S.C. § 2254(d)).  Instead, de novo review applies.  *Id.*; *see Jackson v. Smith*, 745 F.3d 206, 209 (6th Cir. 2014) ("[C]laims not 'adjudicated on the merits' by the state court are given plenary review by a federal habeas court . . . .").

The state, relying on *Harrington v. Richter*, 562 U.S. 86 (2011), argues that we should presume that the state court's decision was a merits decision.  *See id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  But *Harrington* involved a one-line, unreasoned state court decision, *see id.* at 96, and the Supreme Court made clear that the on-the-merits presumption it established "may be overcome when there is reason to think some other explanation for the state court's decision is more likely," *id.* at 99–100.

Here, the state court decision denying Maslonka's second motion for relief from judgment strongly indicates that the state court was enforcing a procedural bar against Maslonka and was not adjudicating Maslonka's claims on the merits.  The state court cited Michigan Court Rule 6.502(G)(1) for the proposition that, "[g]enerally speaking, 'one and only one motion for relief from judgment may be filed with regard to a conviction.'"  It then discussed the exception in Michigan Court Rule 6.502(G)(2) which allows defendants to "file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment."  Although the state court spent a paragraph discussing the Supreme Court's decisions in *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), it did so in

the context of explaining why the exception in Michigan Court Rule 6.502(G)(2) did not apply to Maslonka. And it ultimately based its denial of Maslonka's claim on his failure to "explain[] how the actual holdings of *Lafler* or *Frye* constitute a retroactive change in the law as applied to [his] case." This explanation provides ample "reason to think," *see Harrington*, 562 U.S. at 99–100, that the state court did not adjudicate Maslonka's ineffective-assistance-of-trial-counsel claims on the merits but rather enforced a procedural bar against Maslonka. AEDPA deference is therefore inappropriate and we will review Maslonka's claims de novo. *See Cone*, 556 U.S. at 472.

## C.

"We review the district court's legal conclusions in a habeas proceeding de novo and its factual findings under the clear-error standard." *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (alteration omitted)).

## 1.

Maslonka's ineffective-assistance-of-trial-counsel claims center around his counsel's purported "fail[ure] to meaningfully consult, protect[,] or advocate" for Maslonka during his attempted cooperation with the federal authorities. But the state argues that Maslonka's attempted federal cooperation was a "collateral proceeding" in which Maslonka did not have a Sixth Amendment right to counsel at all. *See Turner v. United States*, 885 F.3d 949, 955 (6th Cir.) (en banc) ("There can be no constitutionally ineffective assistance of counsel where there is no right to counsel in the first place."), *petition for cert. filed*, (U.S. Jul. 20, 2018) (No. 18-106).

As our en banc court recently reiterated, the Sixth Amendment right to counsel attaches when a criminal prosecution is commenced, which occurs "only at or after 'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id.* at 952 (quoting *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008)). "Once the Sixth Amendment right to counsel has attached, criminal

defendants have a right to the assistance of counsel during 'critical stages' of the prosecution." *Id.* And, following the Supreme Court's decisions in *Frye* and *Lafler*, it is clear that plea negotiations are a "critical stage" of a prosecution. *See Turner*, 855 F.3d at 953.

The Supreme Court has not fully answered the "difficult question" of "the duty and responsibilities of defense counsel in the plea bargaining process." *Frye*, 566 U.S. at 144. And the parties have cited no cases establishing whether or not cooperation with federal authorities is considered part of the critical stage of state plea negotiations where, as here, a state plea offer hinges on that federal cooperation. But because we ultimately conclude that Maslonka's counsel was not constitutionally ineffective, we need not and do not decide this question. For purposes of this appeal, we will assume without deciding that Maslonka's attempted cooperation with the federal authorities was part of the critical stage of his state plea negotiations because his more-favorable state plea offer hinged on that federal cooperation. *See generally Wingo v. United States*, 341 F. App'x 132, 134 (6th Cir. 2009) (assuming without deciding that federal cooperation during plea negotiations in a federal prosecution was a critical stage).

## 2.

Maslonka argues that his counsel's absence throughout his attempted cooperation with the federal authorities constituted a constructive denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). In typical ineffective-assistance-of-counsel cases, a habeas petitioner has the burden of demonstrating a Sixth Amendment violation, including demonstrating that he was prejudiced by any deficient assistance of counsel. *See id.* at 658. But where a petitioner suffered a "complete denial of counsel," such a denial is "so likely to prejudice the accused" that courts presume "that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 658–59. And petitioners need not even be *completely* denied counsel—courts sometimes find a "constructive" denial of counsel where "counsel is placed in circumstances in which competent counsel very likely could not render assistance." *See United States v. Morris*, 470 F.3d 596, 601 (6th Cir. 2006) (quoting *Mitchell v. Mason*, 325 F.3d 732, 741–42 (6th Cir. 2003)).

The district court agreed with Maslonka, finding that his counsel's "physical absence at every stage of [Maslonka]'s cooperation constituted a complete denial of counsel," requiring an

"automatic reversal of his conviction . . . without any showing of prejudice." *Maslonka*, 2017 WL 2666103, at \*6.

We emphatically reject the theory that a counsel's mere physical absence from a critical stage of a proceeding, based on the counsel's own failure to be present rather than any *denial* by the state, can constitute a constructive denial of counsel under *Cronic*. Although the Supreme Court said in *Cronic* that it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," 466 U.S. at 659 n.25, each of the cases the Supreme Court cited for this proposition involved a state statute's or state actor's *denying* the physical presence of counsel during a critical stage or otherwise placing limits on counsel's representation of a criminal defendant. *See Geders v. United States*, 425 U.S. 80, 89 (1976) (trial judge denied defendant access to his attorney for seventeen hours); *Herring v. New York*, 422 U.S. 853, 865 (1975) (trial judge denied defendant's counsel the opportunity to make a closing argument); *Brooks v. Tennessee*, 406 U.S. 605, 612–13 (1972) (state law required defendant to testify before other defense witnesses); *Hamilton v. Alabama*, 368 U.S. 52, 53 n.3, 54 (1961) (state did not provide counsel at arraignment); *White v. Maryland*, 373 U.S. 59 (1963) (per curiam) (state did not provide counsel at arraignment); *Ferguson v. Georgia*, 365 U.S. 570, 594–96 (1961) (state prohibited counsel from questioning defendant under oath); *Williams v. Kaiser*, 323 U.S. 471, 474–77 (1945) (state denied counsel throughout entire proceeding). The Supreme Court has said that the *Cronic* exceptions to the normal requirement that habeas petitioners must demonstrate prejudice are "narrow." *Florida v. Nixon*, 543 U.S. 175, 190 (2004).

And the closest we have come to embracing Maslonka's constructive-denial theory was in *Mitchell v. Mason*, where we held:

> When counsel is appointed but never consults with his client *and* is suspended from practicing law for the month preceding trial, *and* the court acquiesces in the constructive denial of counsel by ignoring the defendant's repeated requests for assistance, *Cronic* governs.

325 F.3d at 744 (emphasis added).

Here by contrast, Maslonka's counsel was involved throughout the pre-trial period, just not at the federal cooperation meetings. And as *Mitchell* itself made clear, "counsel's failure in particular instances is evaluated under *Strickland*." *Id.* But more to the point we emphasize today, in *Mitchell* the "trial court repeatedly ignored Mitchell's entreaties for counsel who would properly prepare a defense," *id.*, meaning that some state actor still played a part in preventing adequate representation. That feature of *Mitchell* is absent in Maslonka's case. We therefore decline to extend the *Cronic* complete-denial exception to cases where a counsel is physically absent due to the counsel's own failure to be present, without any denial by the state. Those cases must be brought under the traditional two-part test found in *Strickland v. Washington*, 466 U.S. 668 (1984).

**3.**

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Frye*, 566 U.S. at 140. This two-part test requires defendants first to show "that counsel's performance was deficient" and second to "show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

**a.**

An attorney's performance is deficient when it falls below an objective standard of reasonableness. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," since "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. We therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* And we "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*."[2] *Id.* at 690 (emphasis added).

---

[2]Although we do not decide here whether Maslonka's counsel was constitutionally deficient, we note that it was not until 2012 that the Supreme Court made it clear that plea negotiations are a critical stage of a prosecution. *See Frye*, 566 U.S. at 142–44. Maslonka's plea negotiations with the state occurred in 2009. *See Maslonka*, 2017 WL 2666103, at *1–2. In concluding that Maslonka's counsel was constitutionally deficient, the district court failed

It is an especially "difficult question" to "define the duty and responsibilities of defense counsel in the plea bargain process." *Frye*, 566 U.S. at 144. "Bargaining is, by its nature, defined to a substantial degree by personal style," and "[t]he alternative courses and tactics of negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id.* at 145.

Because we ultimately conclude that Maslonka has not shown that any constitutionally deficient performance by his counsel prejudiced him, we need not and do not decide whether Maslonka's counsel was constitutionally deficient. For purposes of this appeal, we will assume that Maslonka's counsel was constitutionally deficient by, as Maslonka puts it, "fail[ing] to meaningfully consult, protect[,] or advocate" for Maslonka during his attempted cooperation with the federal authorities.

**b.**

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. So "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. Where, as here, *Cronic* does not apply, a defendant must "affirmatively prove prejudice." *See id.* at 693. To do so, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In the plea bargaining context, the "defendant must show that the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. And where a defendant alleges that an earlier favorable plea offer lapsed due to constitutionally deficient performance by his counsel, the defendant must demonstrate a "reasonable probability" that, but

---

to "judge the reasonableness of counsel's challenged conduct . . . viewed as of the time of counsel's conduct," as *Strickland* requires. 466 U.S. at 690.

for that deficient performance, (1) the defendant "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," (2) "the plea would have been entered without the prosecution canceling it . . . if [the prosecution] had the authority to exercise that discretion under state law," (3) "the plea would have been entered without . . . the trial court refusing to accept it[] if [the trial court] had the authority to exercise that discretion under state law," and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

Here, the fourth prong is met because there is more than a reasonable probability that the end result of Maslonka's state criminal process would have been more favorable if he had successfully pleaded guilty to armed robbery without a habitual-offender charge rather than pleading guilty, as he ultimately did, to armed robbery as a third habitual offender. The third prong is likely met as well, since the primary benefit that Maslonka hoped to receive was a dropped charge rather than a predetermined sentence amount, and there is no indication on the record before us that the state judge had the discretion to prevent a state prosecutor from dropping a charge before trial. Maslonka's case fails, however, on the first and second prongs.

*First*, Maslonka has not shown a reasonable probability that, but for his counsel's constitutionally deficient performance, he "would have accepted the earlier plea offer." *Id.* The earlier plea offer was conditional and required Maslonka's "very best of cooperation," including his testifying before a grand jury, so this first prong requires Maslonka to show that he would have testified before the grand jury if his counsel had provided effective assistance.

There was conflicting testimony about why Maslonka did not ultimately testify before the grand jury. But accepting Maslonka's story—as the district court did, *see Maslonka*, 2017 WL 2666103, at *3—the federal authorities did not allow Maslonka to testify because he refused to answer questions posed by the DEA agents about his close friends and family. But Maslonka's counsel had already told Maslonka to "cooperate to the best of his ability" and Maslonka already knew the potential consequences of not fully cooperating with the federal authorities. Maslonka has not shown a reasonable probability that his counsel could have convinced him to answer questions about his close friends and family had she been present and had she repeated her previous advice that he should cooperate to the best of his ability. Nor has Maslonka shown a

reasonable probability that had she been present, his counsel could have persuaded the federal authorities to place an admittedly uncooperative witness before the grand jury.

*Second*, Maslonka has not shown a reasonable probability that, but for his counsel's constitutionally deficient performance, "the plea would have been entered without the prosecution canceling it." *Frye*, 566 U.S. at 147. The state prosecutor testified extensively in the district court, and his testimony clearly showed that any deficiency in Maslonka's counsel's performance during the state plea negotiations did not prejudice Maslonka. The state prosecutor testified that Maslonka's grand jury testimony was "the bare minimum" expected of Maslonka and that he would not receive any benefit if he failed to testify, "no matter whose fault it [was]." Even if Maslonka did testify, "I would have to be absolutely convinced that he could have done absolutely, without possibility, nothing more to satisfy the United States Attorney's Office in their prosecution in order for me to be willing to give him any type of better deal" than the one Maslonka ultimately accepted. And once Maslonka failed to testify, the state prosecutor testified, there was "[a]bsolutely nothing" that Maslonka's counsel could have done to obtain a better deal than the one Maslonka accepted. In fact, even before Maslonka failed to testify, his conduct during the state proceedings had already put his plea offer in jeopardy. Maslonka has not shown a reasonable probability that his counsel could have persuaded the state prosecutor not to cancel Maslonka's plea after Maslonka failed to testify before the grand jury.

Maslonka has therefore failed to demonstrate prejudice under the standard set forth in *Frye*. *See id.* Still, Maslonka argues and the district court found that Maslonka's counsel's constitutionally deficient performance prejudiced Maslonka in two other ways, one in connection with the federal cooperation and the other in connection with the state proceedings.

Maslonka first argues that his counsel should have "formaliz[ed] his cooperation . . . obligations, either orally or in writing." The district court agreed. *See Maslonka*, 2017 WL 2666103, at *11. But the state prosecutor testified that because of his office's "strict limitations and policies," he had never before entered into a formal cooperation agreement with a defendant and he was not aware that any other prosecutor in his office had ever done so either. Similarly, an AUSA testified that his office normally provided cooperation agreements only to federal defendants or persons about to become federal defendants, and that he did not offer Maslonka a

cooperation agreement because "Maslonka was never charged with a [federal] crime nor was he going to be charged with a federal crime." And even if he had, "our written agreement simply says a defendant will provide substantial assistance. It's really quite broad and, to be honest with you, it's quite one sided." Maslonka has not demonstrated a reasonable probability that his counsel could have persuaded either the state prosecutor or the federal authorities to deviate from their normal practices by providing a formalized cooperation agreement, or even if his counsel had been able to do so, that such a formalized cooperation agreement would be any more specific than the oral offer Maslonka had already received. Maslonka has therefore failed to demonstrate that his counsel's failure to "formalize his cooperation obligations" prejudiced him.

Maslonka also argues that his counsel did not "effectively advocat[e]" on Maslonka's behalf at the sentencing hearing. The district court agreed. *See id.* at 12. But Maslonka testified that at his plea-entry hearing his counsel had a sidebar conversation with the sentencing judge about Maslonka's attempted cooperation, but that the judge said that Maslonka would "g[e]t nothing for [his] cooperation." Maslonka has not demonstrated a reasonable probability that the sentencing judge would have changed her mind and given Maslonka some benefit for his cooperation if Maslonka's counsel had stated on the record the details of Maslonka's cooperation or had filed a motion for a downward departure. Maslonka has therefore failed to demonstrate that his counsel's failure to "effectively advocate" at the sentencing hearing prejudiced him.

Because Maslonka has not demonstrated that any constitutionally deficient performance by his counsel prejudiced him, he has not satisfied *Strickland*'s test. Maslonka was therefore ineligible for habeas relief on the ground that his trial counsel rendered ineffective assistance during Maslonka's state prosecution, and the district court erred by granting that relief.

### III.

For the foregoing reasons, we **REVERSE** the judgment of the district court. As the district court noted, however, Maslonka also alleged in his habeas petition that his three appellate attorneys were constitutionally ineffective in a variety of ways. *See, e.g., Maslonka*, 2017 WL 2666103, at *13 n.2. Maslonka's appointed habeas counsel did not discuss these claims in any detail in Maslonka's supplemental briefing, nor did the district court rule on these claims. *See id.*

We therefore **REMAND** and instruct the district court to consider only Maslonka's ineffective-assistance-of-appellate-counsel claims.