RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KYLE K. CLARK,

*Petitioner-Appellant*,

*v.*

No. 18-1640

KEVIN LINDSEY, Warden,

*Respondent-Appellee*.

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13485—Stephen J. Murphy, III, District Judge.

Argued: June 28, 2019

Decided and Filed: August 23, 2019

Before: NORRIS, CLAY, and SUTTON, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Kevin S. Gentry, GENTRY NALLEY, PLLC, Howell, Michigan, for Appellant. Rebecca A. Berels, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Kevin S. Gentry, GENTRY NALLEY, PLLC, Howell, Michigan, for Appellant. Rebecca A. Berels, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

SUTTON, J., delivered the opinion of the court in which NORRIS, J., joined. CLAY, J. (pp. 7–14), delivered a separate dissenting opinion.

---

**OPINION**

---

SUTTON, Circuit Judge.   A Michigan jury convicted Kyle Clark of criminal sexual assault and domestic violence.  In his direct appeal, Clark argued that his convictions should be set aside based on a Sixth (and Fourteenth) Amendment violation that allegedly arose when a scheduling error prohibited his lawyers from being physically present at his competency hearing. The Michigan Court of Appeals rejected the claim on the ground that the attorneys nonetheless were able to communicate with Clark and the court about the competency report—and all agreed that he no longer would challenge his competence.  Clark filed a § 2254 habeas petition raising the same claim.  The district court denied the petition.  Because no U.S. Supreme Court case requires a different result, we affirm.

The State of Michigan charged Kyle Clark with criminal sexual assault and domestic violence in 2011.   Before trial, Clark agreed to undertake a psychological examination to determine his competence to stand trial.  The report concluded that Clark was competent.  Clark went over the report with his two attorneys, and the three agreed that Clark would no longer challenge his competence to be tried.  His legal team communicated the point to the trial judge, and the court set a date for Clark formally to agree to be tried.  A scheduling mix-up interfered. On the date of the hearing, each of Clark's two attorneys mistakenly thought the other would attend the hearing.  The end result was a hearing with just Clark, the prosecutor, and the trial judge present.  The judge communicated his understanding, based on a prior message from Clark's counsel, that Clark would no longer challenge his competence to be tried.  Consistent with all of these communications, Clark agreed to be tried, and the hearing ended.  In the criminal trial, which occurred about four weeks later, a jury found Clark guilty on both counts and sentenced him to 10 to 15 years' imprisonment.

On direct appeal, Clark argued that the State deprived him of his right to counsel at the competency hearing.  The Michigan Court of Appeals disagreed, noting Clark's communication with his attorneys and his attorneys' communication with the trial court.  *People v. Clark*, No. 313121, 2014 WL 2795855, at *4 (Mich. Ct. App. June 19, 2014) (per curiam).

In this § 2254 habeas action, Clark does not challenge his competence to be tried. He instead claims that the physical absence of his attorneys from the competency hearing automatically requires the verdict to be undone and automatically requires his release from jail on the ground that the absence of counsel amounted to a structural error in the proceeding. The district court denied the petition, holding that no Supreme Court case calls for automatic prejudice in this situation. We agree.

AEDPA establishes the framework for resolving this case. In reviewing Clark's petition, we may not grant relief unless the state's decision on that claim contradicted or unreasonably applied U.S. Supreme Court precedents. 28 U.S.C. § 2254(d)(1). That means the state court must have applied Supreme Court holdings in an "objectively unreasonable" way, as "even clear error will not suffice" to overturn a state court decision in this setting. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quotation omitted).

The state court reasonably denied Clark's claim of structural error. According to the U.S. Supreme Court, a defendant can show a Sixth Amendment violation without the need to prove prejudice when there is a "complete denial of counsel" at, or counsel is "totally absent" from, a "critical stage of the proceedings." *United States v. Cronic*, 466 U.S. 648, 658–59 & n.25 (1984). At least two limitations accompany the *Cronic* rule—each applicable here.

One is that no Supreme Court case has ever found structural error unless the State was responsible for counsel's absence. *See Maslonka v. Hoffner*, 900 F.3d 269, 279 (6th Cir. 2018). To warrant automatic prejudice, a state law or state actor must prevent counsel's presence or limit his representation. *Id.*; *cf. Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928–29 (2019). That did not remotely happen. The State did not prevent Clark's attorneys from attending the hearing. All that happened was that Clark's attorneys had a scheduling mix-up, one mitigated by the attorneys' earlier communication with Clark and the judge about the competency report and earlier decision not to challenge his competence any longer. *Cronic*'s presumption of prejudice simply does not apply in this setting.

A second limitation is that no Supreme Court case has found structural error where the lawyers and the court and the client in fact communicated about the point at hand. *Cronic* itself

did not involve "a claim based on counsel's absence." *Woods*, 135 S. Ct. at 1377. In the two most analogous habeas cases about "counsel's absence," the Court denied relief each time. In *Wright v. Van Patten*, the defendant's attorney was physically absent from a plea hearing but participated by speakerphone. 552 U.S. 120, 121 (2008) (per curiam). The Court denied relief because none of its cases required automatic prejudice in that setting—where the defendant's lawyer could communicate with the court, just not in a face-to-face way. *Id.* at 125–26. In *Woods v. Donald*, the defendant's attorney was gone for about ten minutes of trial testimony about other defendants. 135 S. Ct. at 1375, 1377–78. The Court again denied relief because none of its cases made clear that such a situation warranted automatic prejudice. *Id.* at 1377–78. In doing so and in reversing a contrary decision of our court, the Supreme Court reminded the lower federal courts that state courts "enjoy broad discretion" where "the precise contours of [a] right remain unclear." *Id.* at 1377 (quotation omitted). The state court's decision in today's case fits that description—and warning—to a tee.

Two of our own cases bolster this conclusion. In *Makidon v. Elo*, the defendant pleaded guilty while his attorney was not in the courtroom. 3 F. App'x 409, 412 (6th Cir. 2001) (per curiam). But the defendant had talked to his attorney about the charge against him and told the court that he wished to plead guilty without his attorney. *Id.* On those facts, we denied the defendant's § 2254 *Cronic* claim. *Id.* In *United States v. Brika*, the defendant's attorney was absent when the judge instructed the jury. 416 F.3d 514, 523–26 (6th Cir. 2005). On direct review, we declined to presume prejudice because Brika's counsel had seen and debated the proposed instructions with the court before the judge instructed the jury. *Id.*

Keep in mind, moreover, exactly what is at stake. A failure to grant automatic prejudice for a Sixth Amendment violation under *Cronic* does not mean the defendant has no recourse. Quite to the contrary. The defendant still may show that his attorneys provided ineffective assistance—a well-paved route for proving a Sixth Amendment violation. To prevail on that claim, Clark must establish that his attorneys performed deficiently *and* prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Clark cannot obtain relief on that ground. Sure, he might be able to establish that his lawyers' failure to attend his competency hearing fell below the performance expected of

reasonable attorneys. But he could not show actual prejudice from the error. Clark's attorneys got confused about who would be where when. Even so, they told the judge before the hearing that they did not object to the report and that Clark wanted to go to trial as scheduled. At the hearing, the court explained the attorneys' position and asked Clark for his thoughts. Clark confirmed that he "spoke [at] length" about "the competency hearing with both of [his] attorneys" and that he wanted to go ahead with trial. R. 6-9 at 4–5. The court found that Clark had reviewed the report with his attorneys and accepted its competency finding. Clark indeed makes no argument today that he lacked competence or that the report erred in any way. The attorneys' physical absence, all in all, did not hurt Clark's defense.

The dissent claims that two of *our* cases require relief. But we may *grant* habeas relief under AEDPA only if the state court contradicted or unreasonably applied the *Supreme Court's* decisions. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000). A Sixth Circuit decision is not a U.S. Supreme Court decision.

What's more, the Sixth Circuit decisions are not helpful even on their own terms. Neither decision addresses the state-action requirement that links the U.S. Supreme Court's decisions and thus neither decision offers a holding on what it means when a state court proceeds without counsel present due to no misconduct by the State. *See French v. Jones*, 332 F.3d 430 (6th Cir. 2003); *Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003). The case that does address the point head on, our decision in *Maslonka*, comes out the other way. There, the federal agents and Assistant U.S. Attorney, no less state actors than a trial judge, met and discussed plea deals with Maslonka in the absence of his counsel. 900 F.3d at 274–75. And yet there, we rejected the *Cronic* automatic prejudice claim due to the absence of state action interfering with the client's consultations with his lawyers. All told, the Supreme Court's cases in this context require more active involvement—say failing to appoint counsel, denying the opportunity to cross-examine witnesses, denying a chance to make a closing argument, or denying an attorney access to his client—by a state law or state actor to find structural error. *See id.* at 279–80. In this case, the trial court's decision to proceed with Clark's competency hearing despite the attorneys' scheduling error, but with assurance from the attorneys and from Clark that they had reviewed the report and did not object, does not meet that threshold.

Even setting aside the state action problem, this case differs from *French* and *Caver* in other ways. In *French*, the court, without prior warning or discussion, gave the jury a non-standard instruction before the defendant's attorneys returned from a recess. 332 F.3d at 434. In *Caver*, the court, again without prior warning or discussion, wrote the jury a note and reinstructed the jury while the defendant's counsel was absent. 349 F.3d at 351–52. *Brika* distinguished both of those cases on the ground that the lawyer in *Brika* spoke to the court about the jury instructions beforehand. 416 F.3d at 525. That is today's case, which is akin to *Brika* because one of Clark's attorneys talked to the court about the competency hearing in advance and told him they had no objection to the report's finding. All of this shows at a minimum that the Michigan Court of Appeals did not contradict or unreasonably apply the U.S. Supreme Court's decisions in this area.

Clark objects, featuring the "totally absent" language in *Cronic*. But that language must be read in the context of other language—that *Cronic* acknowledged only a "narrow" structural-error exception, *Florida v. Nixon*, 543 U.S. 175, 190 (2004), that applies in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *Cronic*, 466 U.S. at 658. The U.S. Supreme Court has never applied automatic prejudice based on an attorney's mere physical absence for some period of time, leaving plenty of room for "fairminded disagreement" over today's fact pattern. *Woods*, 135 S. Ct. at 1376 (quotation omitted). That's all we need to know. The Michigan Court of Appeals reasonably rejected Clark's claim.

We affirm.

———————————

**DISSENT**

———————————

CLAY, Circuit Judge, dissenting.  This case comes to us on habeas review after the trial court held a competency hearing in Petitioner Kyle Clark's criminal trial, despite defense counsel's failure to appear for the proceeding.  The majority holds that despite this failure, Clark was not deprived of his right to counsel.  Because this holding conflicts with the Supreme Court's directive in *United States v. Cronic* that constitutional error has occurred "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," I respectfully dissent.  466 U.S. 648, 659 n.25 (1984).

**I. Background**

The State of Michigan initiated criminal proceedings against Clark for criminal sexual assault and domestic violence in 2011.  In a May 2012 pretrial hearing, defense counsel raised concerns about Clark's mental status, and the trial court referred Clark for a competency hearing.  The trial court scheduled a competency hearing on August 1, 2012, at which the parties would discuss a report from the Michigan Department of Community Mental Health recommending that Clark be found competent.

What happened next is unclear, despite the majority's attempt to present the facts as straightforward.  When the parties gathered for the hearing on August 1, 2012, Clark's attorneys were absent.  The trial court discussed the attorneys' absence with Clark and the prosecution.  The trial judge initially stated that Clark's attorneys had not communicated with him, but later reversed course and stated that there had been some form of communication:

> THE COURT: Mr. Clark, apparently there was some mix-up in your attorney's office with regard to which attorney would be here or not, given the fact that the Court moved up the court date in light of the report that the Court received from the Michigan Department of Community Mental Health.
>
> I'm not sure if the Prosecutor had any communication with either of the attorneys of record.  'Cuz I know their office didn't communicate with my office.
>
> [THE PROSECUTION]: No, your Honor, they—they failed to communicate with us on a regular basis as it is.

THE COURT: What I can state for the record is what was communicated was that, and again I'm not sure if it was Mr. Cataldo or Mr. LaCommare, but they communicated with the off—with my office that they had no objection to accepting the July 2nd, 2012 report where the Defendant was deemed to be competent and—and proceed with this matter pending the trial as is currently scheduled on August 27th.

(R. 6-9, Final Pretrial Transcript, PageID # 210–211.)[1] The prosecution initially objected to the court proceeding without Clark's attorneys present to explain "whether or not they've gone over this . . . report with their client." (*Id.* at PageID # 210.) In fact, the prosecution expressed doubt that the defense attorney who spoke with the trial court had gone over the competency report at all, stating:

I would object to the Court accepting that stipulation because Mr. LaCommare [one of Clark's attorneys], who's the individual I understand talked to your staff, . . . stated that he wasn't covering the competency portion of it, and[] therefore he wasn't familiar with it and yet he wants this Court to accept the stipulation to that report. I would presume he hasn't read it or I would presume that he's not familiar with it or is not in position to stipulate it or go over it with his client. So I think to protect the Defendant in this position I would . . . ask for [] a week adjournment with [the] request that Mr. LaCommare and Mr. Cataldo both be present before your Honor next week, to explain who's the attorney, whether or not they've gone over this report with their client, and at that point our office would be willing to stipulate to it. But, I think at this point it would be a failure of the system to allow stipulation to that report.

(*Id.*) Clark then stated, "I've gone over the competency hearing with both of my attorneys and spoke in length with it [sic] and I believed it was deemed that we would proceed with trial on August 27th." (*Id.* at PageID # 210–11.) The trial court then deemed Clark competent, based on "the representations of Mr. Clark that have been placed on record that he's met with both of these attorneys to go over the report and accepting the stipulation." (*Id.* at PageID # 212–13.)

---

[1]The majority suggests that the trial judge heard directly from Clark's counsel before the hearing, yet the nature of this supposed communication is entirely unclear from the trial judge's statements. Op. at 2 ("The judge communicated his understanding, based on a prior message from Clark's counsel, that Clark would no longer challenge his competence to be tried."). Instead, at the competency hearing, the trial judge relayed his second-hand understanding of the situation based on the fact that one of Clark's attorneys had apparently "communicated . . . with [his] office" that they would not attend the hearing and did not object to accepting the report. The obvious impropriety of proceeding in such circumstances prompted even the prosecution to object, out of concern for Clark's constitutional rights.

The case proceeded to trial, and Clark was found guilty and sentenced to 10 to 15 years' imprisonment. The Michigan Court of Appeals affirmed Clark's conviction, finding that he was not deprived of the right to counsel at his competency hearing because "the trial court accepted defendant's representation that he considered the competency report with his attorneys and accepted the stipulation that defendant was competent." (R. 6–14, Mich. Ct. App. Opinion, PageID # 370.)

Clark filed this habeas action in the Eastern District of Michigan on September 27, 2016. After the district court denied Clark's request for habeas relief and declined to issue a certificate of appealability, this Court granted a certificate of appealability on the issue of whether Clark's Sixth Amendment right to counsel was violated when the trial court held Clark's competency hearing without his counsel present.

## II. Clark's deprivation of the right to counsel

The Sixth Amendment guarantees a defendant the right to counsel at all critical stages of the criminal process. *Iowa v. Tovar*, 541 U.S. 77, 87 (2004). In determining whether Clark's constitutional right to counsel was violated, one important point must be addressed at the outset. The majority repeatedly relies on Clark's statements at the competency hearing to the effect that he had previously discussed the competency hearing with his attorneys. But because Clark made those statements before his competency had been determined, we cannot rely on them in determining whether Clark's right to counsel was violated. *Cf. Pate v. Robinson*, 383 U.S. 375, 384 (1966) ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."). This also explains why *Makidon v. Elo*, cited by the majority, has no bearing on this case: in *Makidon*, which involved a plea hearing rather than a competency hearing, the Court relied heavily on the fact that "Makidon told the trial court that he had no further questions for counsel, that he had decided how to proceed with the advice of counsel, and that he affirmatively wished to proceed despite counsel's absence from the courtroom." 3 F. App'x 409, 412 (6th Cir. 2001). Moreover, the Court in *Makidon* found that the defendant "knowingly and voluntarily waived his counsel's presence from the plea hearing." *Id.* In contrast, Clark's statements to the effect that he had discussed the hearing with his attorneys and wished to move forward occurred

at Clark's own competency hearing—before his competency had been established—so it would defy logic for this Court to rely on Clark's statements in reaching its decision.

The Michigan Court of Appeals held that Clark's attorneys' failure to appear at his competency hearing did not deprive Clark of the representation he was due.  The court based this finding on the fact that one of Clark's attorneys purportedly communicated his absence and acceptance of the report to the trial court before the hearing, and "[t]he trial court accepted [Clark's] representation that he considered the competency report with his attorneys and accepted the stipulation that [Clark] was competent."  (R. 6-14, Mich. Ct. App. Opinion, PageID # 370.)

Clark argues that the Michigan Court of Appeals' decision directly contradicts the Supreme Court's decision in *Cronic*.  In that case, the Supreme Court stated that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."  466 U.S. at 659.  In other words, the Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Id.* at 659 n. 25.  In cases where counsel was "totally absent" during a critical stage of criminal proceedings, *Cronic* directs courts to bypass the *Strickland* analysis of whether a defendant was prejudiced by counsel's deficient performance.

The majority relies on this Court's decision in *Maslonka v. Hoffner*, 900 F.3d 269 (6th Cir. 2018).  In *Maslonka*, this Court considered whether *Cronic* applied when a defendant's attorney failed to appear during federal cooperation meetings between Maslonka and federal agents, which we assumed without deciding were critical stages of the proceedings.  In addressing the petitioner's deprivation of counsel argument, this Court stated that "a counsel's mere physical absence from a critical stage of a proceeding, based on the counsel's own failure to be present rather than any denial by the state," is not sufficient to constitute denial of counsel under *Cronic*.  *Id.* at 279.  Instead, this Court determined that *Cronic* only applies if the state "played a part in preventing adequate representation."  *Id.* at 280.

The majority overlooks a crucial component of *Maslonka*, which recognized the ample case law demonstrating that a trial judge's actions can serve as the role of the state in denying counsel. *Id.* For example, the Court in *Maslonka* compared that case to the earlier Sixth Circuit case *Mitchell v. Mason*, in which the Sixth Circuit affirmed a grant of habeas relief to a state prisoner under *Cronic*. *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003). In *Mitchell*, the Court found that *Cronic* applied when the trial court had refused to appoint new counsel despite knowing that the defendant's counsel was not providing representation. *Id.* at 741–42. *Maslonka* explained that "in *Mitchell* the 'trial court repeatedly ignored Mitchell's entreaties for counsel who would properly prepare a defense,' meaning that some state actor . . . played a part in preventing adequate representation." *Maslonka*, 900 F.3d at 280 (quoting *Mitchell*, 325 F.3d at 744). Similarly, in *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), this Court affirmed a district court's grant of habeas to a state court prisoner under factual circumstances similar to Clark's. The trial court in that case gave a supplemental jury instruction to deadlocked jurors while French's counsel was absent. *Id.* at 434. This Court found that French had been denied his right to counsel at a critical stage of the proceedings, and that he was thus entitled to a presumption of prejudice under *Cronic*. *Id.* at 436–39. This Court reached the same conclusion under nearly identical facts in *Caver v. Straub*. 349 F.3d 340, 350 (6th Cir. 2003) ("[U]nder *Cronic* . . . if Petitioner's trial counsel was, indeed, absent during the re-instruction, a structural error occurred in the trial court proceeding, and either relief from judgment or a writ of habeas corpus could be properly granted on this ground. Any conclusion otherwise would be an unreasonable application of clearly established federal law as stated in *Cronic*.").

The critical difference between *Maslonka* on the one hand and *Mitchell*, *French*, and *Caver* on the other is the involvement of the trial court in the denial of counsel. In *Maslonka*, the alleged deprivation of counsel occurred when Maslonka's counsel did not attend cooperation meetings with federal authorities, which this Court assumed without deciding were "part of the critical stage of his state plea negotiations because his more-favorable state plea offer hinged on that federal cooperation." *Maslonka*, 900 F.3d at 279. Federal cooperation meetings are not a stage of proceedings at which the trial court judge would normally be present, so the trial judge played no role in sanctioning Maslonka's counsel's absence at those meetings. In contrast, the deprivations of counsel in *Mitchell*, *French*, and *Caver* each involved active participation by the

trial court. In each case, the trial court knew of counsel's absence and decided to continue with proceedings without them. In *Mitchell*, the most extreme of the three cases, Mitchell's counsel made "no effort to consult with the client" and was suspended from practicing law before the trial, yet the trial court denied Mitchell's repeated requests for a new attorney. *Mitchell*, 325 F.3d at 744. Similarly, in *French* and *Caver*, the trial court issued new jury re-instructions despite knowing that the defendants' attorneys were not present. *French*, 332 F.3d at 436–39; *Caver*, 349 F.3d at 350.

Together, these cases demonstrate that when a trial court proceeds with a critical stage despite knowing that a defendant's counsel is not present, *Cronic* governs. In other words, a trial court's decision to proceed with the critical stage despite counsel's absence is sufficient to establish that a state actor "played a part in preventing adequate representation," such that *Cronic* applies and the habeas petitioner is entitled to a presumption of prejudice. *Maslonka*, 900 F.3d at 280. The majority's holding to the contrary renders *Maslonka* inconsistent with this Court's earlier published cases. The facts of this case are more similar to *Mitchell*, *French*, and *Caver* than to *Maslonka*. Just as in *Mitchell*, *French*, and *Caver*, the trial court in this case chose to continue with Clark's competency hearing, despite its extensive conversation with Clark and with the prosecution noting the obvious fact that Clark's attorneys were absent. The trial court ostensibly made this decision because one of Clark's attorneys called the trial court or the trial court's chambers before the hearing to let the trial court know that Clark's attorneys would not be in attendance. By allowing counsel to call ahead and assert that they would not attend the competency hearing and then deciding Clark's competency in their absence, rather than requiring Clark's counsel to appear at the competency hearing and state their position on the record, the trial court "played a part in preventing adequate representation" for Clark. *Maslonka*, 900 F.3d at 280. Thus, this case is one in which "some state actor . . . played a part in preventing adequate representation," not one in which the lack of representation was attributable only to "the counsel's own failure to be present." *Id.* at 279–80. *Cronic* therefore governs. Clark suffered a "complete denial of counsel [at his competency hearing, which] mandates a presumption of prejudice." *French*, 332 F.3d at 436 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). And as the Supreme Court explained in *Brecht v. Abrahamson*, 507 U.S. 619, 629–30 (1993),

"deprivation of the right to counsel . . . requires automatic reversal of the conviction because [it] infect[s] the entire trial process."**2**

The majority glosses over a crucial distinction when it asserts that the dissent relies on the fact that "*our* cases require relief," rather than Supreme Court cases, as is required under AEDPA. Maj. Op. at 5. As the Supreme Court has explained, "an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 n.6 (6th Cir. 2010) ("We are bound by prior Sixth Circuit determinations that a rule has been clearly established."). *Mitchell*, *French*, and *Caver* all found it clearly established under the Supreme Court's precedent in *Cronic* that when the trial court proceeds with a critical stage of criminal proceedings despite defense counsel's total absence, the defendant's right to counsel has been violated. We are thus bound by our previous decisions in *Mitchell*, *French*, and *Caver* concluding that, under AEDPA, a state court directly contradicts *Cronic* when the state court finds no deprivation of counsel despite counsel's total absence under analogous scenarios. To adhere to these decisions, as we must, is not to measure the state court's decision against Sixth Circuit precedent, which would be improper under AEDPA—instead, it is to respect Sixth Circuit precedent interpreting the scope of the Supreme Court's decision in *Cronic*. *Mitchell*, *French*, and *Caver* are all AEDPA cases holding that *Cronic* governs when the trial court proceeds with a critical stage despite defense counsel's total absence.

In sum, the Michigan Court of Appeals rendered a decision that "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" in *Cronic*, when it held that Clark's Sixth Amendment right to counsel was not violated at his

---

**2**The majority claims that this case is more like our decision in *United States v. Brika*, 416 F.3d 514, 525–26 (6th Cir. 2005), than like *Mitchell*, *French*, and *Caver*, because in *Brika*, the trial court discussed its proposed actions with defense counsel before providing jury re-instruction in counsel's absence. In *Brika*, the trial court engaged in a "fairly lengthy" discussion directly with defense counsel before providing jury re-instruction in counsel's absence. *Id.* at 521. In contrast, in this case, the trial court apparently did not speak directly with defense counsel at all; at best, Clark's counsel communicated their intentions with the trial court's "office." Moreover, the contents and nature of the communication in this case are entirely unknown, outside of the trial court's confusing second-hand statements. Thus, while this distinction may have had some persuasive value in *Brika*, it does not hold water in this case.

competency hearing. 28 U.S.C. § 2254(d). Clark's attorneys were totally absent at the competency hearing, and *Cronic* explains that the Supreme Court finds "constitutional error without any showing of prejudice when counsel was . . . totally absent" during the proceeding at issue. *Cronic*, 466 U.S. at 659 n.25. The Michigan Court of Appeals' decision thus directly contradicted *Cronic*, which this Circuit's precedent demonstrates applies in this case. Because Clark was denied counsel at a critical stage of the proceedings, he is entitled to habeas corpus relief. For all of the foregoing reasons, I respectfully dissent.