NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0384n.06

No. 21-2911

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RICKEY WHITE, | ) | |
| Petitioner-Appellant, | ) ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN |
| RANDEE REWERTS, Warden, | ) ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) ) | OPINION |

Before: CLAY, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge. After a state investigation and pre-charge negotiations, Rickey White was charged under Michigan law with two counts of false pretenses and one count of engaging in a criminal enterprise. White decided to plead guilty to those charges as part of an agreement where if he paid restitution he could receive a lower sentence, and his wife would not be charged separately with a felony. After White missed a restitution payment, the state trial court determined that White had breached the agreement and sentenced White to 280 months' to 40 years' imprisonment. White then sought to withdraw his guilty plea based on ineffective assistance of counsel, relying on statements he made in a post-plea affidavit that contradicted his sworn testimony in his plea colloquy. The Michigan courts refused to allow White to rely on his post-plea affidavit and concluded in any event that White had no viable defense to his criminal charges. Having exhausted state-court avenues of relief, White brought this habeas petition, asserting ineffective assistance of counsel by both his trial counsel during the plea process and his direct-

appeal counsel. The federal district court denied his petition, but the court granted White a certificate of appealability. White, however, has not shown that he was prejudiced by his counsels' alleged deficiencies, and he is therefore not entitled to habeas relief based on his ineffective-assistance-of-counsel claims.

The Michigan Court of Appeals set forth the following facts that gave rise to White's state criminal charges, and we presume the state court's findings of fact are correct pursuant to 28 U.S.C. § 2254(e)(1):

> Between 2009 and 2011, defendant, through a company identified as Braunstein & Associates, represented that he could assist struggling homeowners with mortgage modification. Defendant charged an upfront fee and promised a full money-back guarantee. Defendant allegedly represented that there were attorneys on staff to review and assist in preparing loan modification proposals to banks. Apparently, defendant employed no attorneys, and modification proposals were either incomplete or never submitted to the banks.
>
> The Attorney General initiated an investigation of defendant's activities and negotiated with defendant for nearly a year. Before charges were formally filed, defendant and the Attorney General's office reached an agreement whereby defendant would pay $2,000 a week in restitution. Pursuant to this agreement, defendant paid approximately $10,000 in restitution, but then stopped making the required payments. As a result, defendant was formally charged with one count of operating a criminal enterprise and two counts of false pretenses involving $1,000 or more but less than $20,000.

*People v. White*, 862 N.W.2d 1, 2 (Mich. App. 2014).

The state court held a plea hearing after White was charged. White's trial counsel requested that the court conduct a *Cobbs* evaluation, *see People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), which allowed the judge to inform White of what the judge currently thought would be an appropriate sentence based on the information then available to the judge before White decided whether to plead guilty. White's counsel requested a *Cobbs* evaluation pursuant to which White's sentencing would be delayed if he made restitution payments, and after the conclusion of the delay

White would be sentenced at the low end of the guidelines range. The trial court offered the following *Cobbs* assessment:

> I will make the following representation pursuant to *People v. Cobbs*, if [White] were to plead today he would not be sentenced for a period in approximately 60 days. If, with—at the time of sentencing he paid, $20,000.00, then I would allow him to have a delayed sentence for another 90 days. If he pays another $20,000, then I'd continue it for the maximum of 11 months.
>
> And assuming he meets all those conditions, any sentence would not exceed the bottom one-third of the guideline range.

R. 5-2, PageID #960.

White decided to plead guilty, and the court conducted a plea colloquy. The court then explained the *Cobbs* evaluation in detail, informed White of his constitutional rights, and confirmed that White wished to waive those rights in order to plead guilty. The court asked, "Has anyone threatened you or placed you under pressure to make you plead guilty, or promised you anything not disclosed pursuant to the answers already given?" White answered, "no, your honor." The court also confirmed that there was a sufficient factual basis to support White's guilty plea. The court concluded that White's guilty pleas were "understanding, voluntarily and accurately made," and accepted his pleas.

When the parties reconvened for the delayed sentencing, the court determined that White had breached his payment obligation under the *Cobbs* evaluation. A week later, the court sentenced White to a term of 280 months' to 40 years' imprisonment and ordered him to pay $283,245.00 in restitution.

White subsequently obtained new counsel and moved to withdraw his plea. White also requested an evidentiary hearing and supported this motion with his own affidavit. The affidavit stated in relevant part that White retained his trial counsel at the recommendation of his previous attorney two days before his plea hearing, his trial counsel did not speak to him about his case for

more than thirty minutes the day of the hearing, his trial counsel did not request any documents related to the case, his trial counsel did not advise him of any possible defenses to his charges, his trial counsel pressured him into taking the plea, and White felt pressured to take the plea because of the threat of his wife's being charged with a felony and his losing his children. White also asserted that he told his trial counsel after the hearing that he wished to withdraw his plea, but that his counsel discouraged him from doing so on the ground that the court would not accept the request. The court held a non-evidentiary hearing on the motion, and the court expressed concern that the affidavit conflicted with White's sworn testimony in the plea colloquy. The state trial court ultimately denied the motion and White's request for an evidentiary hearing.

White requested—and was granted—permission to appeal that decision to the Michigan Court of Appeals. The Michigan Court of Appeals rejected White's claims and affirmed White's conviction. *People v. White*, 862 N.W.2d 1, 6 (Mich. App. 2014). Regarding the denial of the evidentiary hearing, the Michigan Court of Appeals concluded that the trial court did not abuse its discretion because "[White's] offer of proof, i.e., his own affidavit, is inconsistent with [his] own testimony during the plea hearing" and Michigan law bars the trial court "from considering testimony or affidavits inconsistent with statements made during the plea hearing" when "a plea is entered in accordance with the applicable court rules." *Id.* at 4.

The Michigan Court of Appeals also rejected White's claim that he had received ineffective assistance of counsel. As the court explained:

> Defendant testified at the plea proceeding that he fully understood the plea and the sentencing evaluation, that he was satisfied with his legal advice, and that he was not under any pressure to tender the guilty plea. Defendant's contradictory affidavit is insufficient to contradict his sworn testimony in open court. *Armisted,* 295 Mich. App. at 49, 811 N.W.2d 47. The record below indicates that defendant knowingly and voluntarily accepted the plea agreement.

Further, defendant has not established that he had a viable defense of which his counsel failed to advise him. Defendant devotes a great deal of his brief on appeal to explaining that he operated a legitimate business that processed loan modification applications under the Home Affordable Modification Program. Defendant represents that the banks and other lenders as a whole did not live up to their obligations under the program. Thus, apparently, the defense that defendant was deprived of asserting was that struggling homeowners suffered financial losses simply because the financial institutions set up roadblocks for individuals seeking relief under the program. We conclude that defendant has not articulated a viable defense. The defense he sets forth does not even address the charges that defendant misrepresented to his customers that he had attorneys on staff to prepare and present modification proposals. This defense further does not address the charge that the applications were incomplete or, indeed, never even submitted to the program. Considering this, defendant has not established that his plea was unknowing and involuntary because his counsel failed to advise him of a viable defense.

*Id.* at 4–5.

After the Supreme Court denied his application for leave to appeal, White—through new counsel—moved the state trial court for relief from judgment under Michigan Court Rule 6.502. White again raised his ineffective-assistance of trial-counsel claim and also raised a new claim that his appellate counsel had been ineffective for failing to argue—under *United States v. Cronic*, 466 U.S. 648, 658–62 (1984)—that the circumstances themselves surrounding White's guilty plea were so likely to prejudice White that White was presumptively prejudiced by a loss of Sixth Amendment counsel, without any inquiry into the actual conduct of White's trial counsel. The trial court addressed each of White's contentions and denied his motion for relief from judgment.

After his unsuccessful attempts in state court to withdraw his guilty plea, White brought a petition for writ of habeas corpus in federal court. In that petition, White asserts that he was denied effective trial counsel, and that his guilty plea was therefore involuntary, because his trial counsel failed to investigate the case and properly advise White of an obvious and substantial defense. White also contended that he was denied effective assistance of counsel by his direct-appeal counsel because that counsel "failed to raise critical issues which would have been outcome

determinative on appeal." The district court held a non-evidentiary hearing, and the parties filed extensive briefing on the issues raised in the petition.

The district court issued a thorough opinion that examined and denied White's claims for habeas relief. The district court concluded that "White has not demonstrated that the state courts acted contrary to, or unreasonably applied, clearly established federal law when they rejected his ineffective assistance claims." Further, the district court rejected White's attempts to rely on *Blackledge v. Allison*, 431 U.S. 63 (1977) and *Lee v. United States*, 137 S. Ct. 1958 (2017) for the proposition that federal law clearly required Michigan courts to consider his post-plea affidavit as evidence that his trial counsel's performance was deficient.[1]

Next, the district court rejected White's claim that he was entitled to an evidentiary hearing in federal court concerning his ineffective-assistance-of-counsel claims. The court determined that White was not entitled to an evidentiary hearing because White had not shown that "clearly established federal law required the district court to make additional fact findings." Finally, the district court rejected White's ineffective-assistance-of-counsel claim concerning his direct-appeal counsel. The district court concluded that White had failed to point to flaws in the Michigan

---

[1] *Blackledge* held that "the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment," at least where the state-court record was ambiguous concerning "the proceeding at which the guilty plea was accepted" and the "status of the process of plea bargaining at the time the guilty plea was made." 431 U.S. at 75–76. The district court below held that *Blackledge* concerned only evidentiary requirements for *federal habeas* proceedings, not state criminal proceedings and therefore was not applicable to the Michigan courts' refusal to consider White's affidavit. In *Lee*, the Court allowed Lee to support his ineffective-assistance-of-counsel claim with post-plea testimony that he would not have pleaded guilty if he had known that he would be deported as a result. 137 S. Ct. at 1967–68. The district court concluded that White's post-plea affidavit conflicted with his plea testimony, and *Lee* allowed consideration of a post-plea affidavit only where both contemporaneous evidence and the post-plea assertions were consistent with the defendant's plea testimony.

courts' analysis of this claim and, in any event, White had not shown that his claim would have changed the results of the direct appeal because the supposedly unraised ground on appeal did "not relate to the basis on which the appellate court ruled against White." Although the district court denied White's petition, the court issued him a certificate of appealability with respect to the court's denial of his petition.

On appeal, White argues that the Michigan state courts unreasonably applied clearly established federal law when they rejected his claim that he received ineffective assistance of trial counsel. White primarily contends that the Michigan courts erred when they refused to consider White's post-plea affidavit in support of his contention that his trial counsel's performance was deficient. However, we need not resolve that dispute because, even assuming that White's trial counsel was deficient, White has not shown that he suffered prejudice from his counsel's performance. In other words, White has not shown that the outcome of the plea process would have changed had his trial counsel not been deficient.[2] Of course, to succeed on an ineffective-assistance-of-counsel claim in the guilty-plea process, White must establish both that his counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

White's ineffective-assistance-of-trial-counsel claim is premised on his counsel's alleged failure to investigate and inform White of a possible defense to his state charges, but White has

---

[2] Further, we do not decide whether Michigan courts unreasonably applied *Blackledge v. Allison*, 431 U.S. 63 (1977) and *Lee v. United States*, 137 S. Ct. 1958 (2017) when they refused to consider White's post-plea affidavit. See n. 1, *supra*. White relies on these cases with respect only to whether the Michigan courts incorrectly limited the information they could consider in deciding whether White's trial counsel was deficient; White's arguments do not address the prejudice White would have suffered from the alleged deficient performance. Thus, resolution of those arguments is not necessary where White has not shown that he was prejudiced by his trial counsel's performance.

not shown that he suffered any prejudice from the failure to inform White of that defense. The Michigan court of appeals considered White's defense that he operated a legitimate business, but that court rejected the defense on the merits because it failed to "address the charges that [White] misrepresented to his customers that he had attorneys on staff to prepare and present modification proposals. This defense further does not address the charge that the applications were incomplete or, indeed, never even submitted to the program." *People v. White*, 862 N.W.2d 1, 5 (Mich. App. 2014). Thus, the Michigan court of appeals concluded that White had no viable defense to his state charges. White never claims that he would have insisted on going to trial despite having no viable defense. To show prejudice in the context of the guilty-plea process, White must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Because White has not shown that he would have insisted on going to trial even without a viable defense, White was not prejudiced by his counsel's failure to inform him of a possible defense.

White resists this conclusion by arguing that he was prejudiced because his defense was viable. White claims that his statements to clients could not form the basis of a false-pretenses conviction and that his clients did not rely on his statements. White does not specify whether this is a legal or factual argument, but it is unpersuasive either way. To the extent that White is making a legal argument about the viability of his defense, White is arguing that the Michigan courts incorrectly interpreted state law to determine the factual predicate necessary for a state-law conviction. That argument is foreclosed because it would require us to conclude the Michigan court of appeals erred in applying its own law to determine which legal defenses were available to rebut White's charges. We are bound by a state court's determination of its own law, and we cannot therefore logically grant a writ based on ineffective assistance of counsel when it would

require use to conclude that a state court incorrectly interpreted its own law. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

White's argument is no more persuasive if construed as a factual argument concerning the viability of his defense. White asserts that there was insufficient evidence that his clients relied on his statement because language in his signed agreements with clients indicated that White and his colleagues "are not attorneys and do not give legal advice" and they "strongly urge[] [the] client to seek the advice of an attorney" before entering the agreement. The Michigan court of appeals concluded, however, that White had directly misrepresented to his customers "that he had attorneys on staff to prepare and present modification proposals," and the defense there did not overcome the evidence submitted in support of White's guilty plea. *White*, 862 N.W.2d at 5. When the state court adjudicates the defendant's factual argument on the merits, we may overturn the state court's decision if it involved "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), and "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "Stated differently, it is not enough that reasonable minds reviewing the record might disagree with the state court's factual determination; rather the record must '*compel* the conclusion that the [state] court had no permissible alternative' but to arrive at the contrary conclusion." *Carter v. Bogan*, 900 F.3d 754, 768 (6th Cir. 2018). Given the presence of White's direct misstatements to his customers, the form language in White's contracts does not compel the conclusion that White had a viable factual defense, and White therefore has not shown that the Michigan court of appeals made an unreasonable determination of fact when it determined that White did not have a viable defense to his charges.

White contends that prejudice should be presumed for his ineffective-assistance-of-counsel claim under *United States v. Cronic*, 466 U.S. 648 (1984) even if he has not established prejudice under *Strickland*. In *Cronic*, the Supreme Court explained that prejudice could be presumed when there "is [a] complete denial of counsel," when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id.* at 659–60. White's argument is unpersuasive because he does not claim that the state obstructed his access to counsel. We have previously rejected a similar argument in *Maslonka v. Hoffner*, 900 F.3d 269 (6th Cir. 2018). There, the defendant argued that prejudice should be presumed under *Cronic* because his counsel was not present during his plea negotiations. *Id.* at 279. We rejected Maslonka's reliance on *Cronic* because the cases cited in *Cronic* all involved circumstances where a state statute or a state actor caused the denial of counsel, and we declined to extend *Cronic* to circumstances where the counsel's failure to be present was not because of any denial by the state. *Id.* at 280. Here, White's arguments under *Cronic* all depend on failures by his counsel, rather than any action taken by Michigan prosecutors or Michigan courts to deny White access to his counsel. As we explained in *Maslonka*, "counsel's failure in particular instances is evaluated under *Strickland*." *Id.* As a result, White cannot rely on *Cronic* as a backstop to assume prejudice from his counsel's performance where he has not satisfied the prejudice prong of *Strickland*.

In connection with his claim that his trial counsel was ineffective, White asserts that he is entitled to a federal evidentiary hearing. However, White seeks this hearing only to develop the facts supporting his argument that his trial counsel's performance was deficient. He does not assert any additional facts indicating that he would have insisted on going to trial without a viable

defense.  Because White has not shown he was prejudiced by his counsel's alleged ineffectiveness, we need not determine whether the district court properly denied White an evidentiary hearing concerning the effectiveness of his counsel.

Finally, White also contends that his direct-appeal counsel in the state-court proceedings was ineffective for not arguing that prejudice should be presumed under *Cronic*.  As discussed above, however, White's argument under *Cronic* would not entitle him to relief, and he therefore has not shown that he was prejudiced by his direct-appeal counsel's failure to raise the argument.  To prevail on an ineffective-assistance-of-appellate-counsel claim, a petitioner must show that the appellate counsel's failure to raise an issue was prejudicial.  *Keys v. Booker*, 798 F.3d 442, 456 (6th Cir. 2015).  Because White was not prejudiced by his direct-appeal counsel's omission, he is not entitled to relief on his ineffective-assistance-of-appellate-counsel claim.

For the foregoing reasons, we affirm the judgment of the district court.