NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0111n.06

No. 12-1281

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 30, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SPENCER WILLIAMS, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| HUGH WOLFENBARGER, Warden, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Respondent-Appellant. | ) | |
| | ) | |
| | | OPINION |

Before: SILER and COOK, Circuit Judges; STEEH, District Judge[*]

STEEH, District Judge. Spencer Williams pleaded guilty to second-degree murder after his involvement in an armed robbery resulting in the death of Daniel Garcia. Williams was sentenced to life in prison by the State of Michigan. He subsequently filed a writ of habeas corpus, contending that his guilty plea was involuntary and thus unconstitutional. The district court agreed and granted him a conditional writ of habeas corpus. For the following reasons, we reverse.

I.

---

[*]The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

On December 8, 2007, Williams and an accomplice, Davell Johnson, planned a robbery to steal marijuana from Mr. Garcia. During the robbery, Johnson shot and killed Mr. Garcia. Williams was subsequently charged with first degree felony murder, armed robbery, and being a habitual felon. On March 3, 2009, Williams's counsel indicated that Williams intended to enter a plea of guilty to second-degree murder. Echoing the State's offer, the trial court stated that Williams could plead guilty to second-degree murder or go to trial for first-degree felony murder. Williams responded, "second-degree murder? No, Sir. I don't understand how it can become second-degree murder." The prosecutor then put the offer on the record and explained to Williams that "if you enter a plea to murder second, then we would drop the felony murder and you would have no chance of life without parole, that's gone, and we'd drop the armed robbery and we'd drop the [habitual felon charge]." Williams proceeded to plead guilty to second-degree murder.

At sentencing on March 25, 2009, Williams moved to withdraw his guilty plea. He stated to the court that when he entered his plea, "I was just sayin' 'Yes, yes,' but basically, sir, I swear to you, I didn't understand a word you were sayin'." The court indicated to Williams that "[t]he Court made sure you understood what the prosecution's offer was. You agreed to plead guilty to second-degree murder. You were put under oath. You gave testimony that established the factual basis for second-degree murder . . ." The court found that Williams's "plea was voluntarily made, understanding, knowing, willing, and there would be substantial prejudice to the prosecution if [it] let [him] withdraw [the] plea." The court then denied his motion to withdraw his plea.

Williams appealed to the Michigan Court of Appeals, arguing that his plea was not knowing and voluntary. Williams argued that his allegedly involuntary plea violated "state and federal constitutional due process guarantees." The Michigan Court of Appeals denied Williams's appeal for lack of merit. Williams then submitted an application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court also denied Williams's application.

Williams petitioned the district court for a writ of habeas corpus, again asserting that his plea was not knowing and voluntary. Williams attached to the petition the brief he submitted to the Michigan Court of Appeals and the Michigan Supreme Court. The Magistrate Judge issued a Report and Recommendation that the district court grant Williams his requested relief. The Magistrate Judge concluded that Williams's plea of guilty was not voluntarily, knowingly, and intelligently made because Williams did not understand the nature and elements of second-degree murder. Thus, the trial court's decision that the plea was knowing, intelligent and voluntary involved an unreasonable application of clearly established federal law. The district court adopted the Magistrate Judge's Report and Recommendation and granted Williams a conditional writ of habeas corpus. The State timely appealed.

II.

Before addressing the merits of the claim on appeal, we must first decide whether Williams's due process claim was exhausted in the state courts. *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009) (explaining that exhaustion of state remedies is a threshold barrier to reaching the merits of

a claim).  The respondent argues that the claim upon which habeas relief was granted was unexhausted because Williams never argued in the state courts that he did not understand the nature or elements of second-degree murder.  The respondent contends that Williams's argument in the state court of appeals and Michigan Supreme Court focused solely on the sentencing consequences of his plea, hence that the district court erroneously granted habeas relief on a claim that was not fairly presented to the state courts.

A habeas petitioner's claim must have been "fairly presented" to the state courts in order to be considered properly exhausted, meaning that the state courts must have been "given the opportunity to see both the factual and legal basis for each claim." *Id*. at 415 (citation omitted).  To satisfy this requirement, the petitioner must argue his claim under the same legal theory that was presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012); *see also Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987).  "General allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated"; the claim must allege the denial of a specific constitutional right. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal quotations and citations omitted).

Here, Williams argued in the state courts that his plea of guilty to second-degree murder was not voluntary, knowing, or intelligent.  A plea that is not voluntarily, knowingly, or intelligently made is a violation of one's due process rights, *Henderson v. Morgan*, 426 U.S. 637, 645 (1976), and results in the denial of a specific constitutional right.  Thus, Williams did argue the denial of a

specific constitutional right; but, he did not do so under the same legal theory advanced in this proceeding.

We agree with the State of Michigan that Williams did not argue in the state courts the claim upon which habeas relief was granted. The facts Williams relied upon in his state court briefing focused solely on the State's promise of a sentence well below that of life in prison. He repeatedly suggests that he should be permitted to withdraw his plea of guilty because of a "misapprehension of the value of commitments made to him," as they pertain to his sentence. Williams argued that he firmly believed that he would receive eighteen years' imprisonment for pleading guilty to second-degree murder and that after receiving a life sentence, the State's promise as to the plea bargain became illusory. As such, Williams's argument hinged on his "lack of understanding of the potential consequences of the alleged 'plea bargain.'" However, knowing the consequences of a guilty plea to second-degree murder is not the same legal theory as knowing the elements of second-degree murder.

Despite Williams's many statements that "he was panickin'," that he was "goin' crazy," or that he didn't "understand what[] [was] going on," nowhere in his analysis at the state level does he argue that he was unaware of the elements of the offense of conviction or that his attorney or the court should have explained the elements of second-degree murder but failed to do so. Accordingly, because the claim that Williams presented to the state courts was not argued under the same legal

theory, as our precedent requires, we find that Williams's claim as it was presented to the district court for habeas review is unexhausted.

III.

Even if we were to find that Williams's claim was sufficiently exhausted, it would nonetheless fail on the merits.[1]  "On a federal habeas appeal from a state court judgment, we review a district court's legal conclusions and mixed questions of law and fact de novo, and we review its factual findings for clear error." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (citation omitted).  The State of Michigan argues that if the claim upon which habeas relief was granted was exhausted, habeas relief is still not warranted.  The State contends that the district court failed to afford the state courts the appropriate deference as required by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

Under AEDPA, federal courts are prohibited from setting aside a state court judgment sustaining a prisoner's conviction on any claim adjudicated on the merits, unless: (1) the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or (2) the decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state courts.  28 U.S.C. § 2254(d).  "A state court decision is 'contrary to' established federal law if the state court

---

[1]We are permitted to review the merits of a claim even when the petitioner has failed to exhaust his claim in the state courts.  *See* 28 U.S.C. 2254(b)(2).

arrived at a conclusion opposite to one reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on materially indistinguishable facts." *Ruelas*, 580 F.3d at 408 (citation omitted). While "clearly established" law includes only the holdings of the Supreme Court, not its dicta, *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001), courts may look to the decisions of lower federal courts to assess whether a principle has been "clearly established."

A defendant waives several federal constitutional rights when pleading guilty, and to ensure that the defendant appreciates the consequences of this waiver, the Supreme Court mandates that the plea must be voluntarily, knowingly, and intelligently made. *Brady v. United States*, 397 U.S. 742, 748-50 (1970). A plea cannot be voluntarily and intelligently made where a defendant does not receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). "Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary." *Henderson,* 426 U.S. at 645. And where a defendant pleads guilty to a crime and he is not informed of the elements of that crime, the standard for a "voluntary, knowing, and intelligent" plea is not met and the plea is invalid. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

During the plea colloquy, the trial court is not required to inform the defendant of the nature and elements of the crime, so long as "the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id*.

(citation omitted). Where competent counsel assures the court that the defendant has been informed of the nature and elements of the crime, we may rely on this assurance to find that the defendant has been properly informed. *Id.* Indeed, even absent a clear showing on the record, we presume that counsel did in fact explain the nature of the offense to the defendant. *Henderson*, 426 U.S. at 647. But even if our presumption is incorrect, the record indicates that Williams admitted facts establishing each element of second-degree murder.

In Michigan, the elements of the lesser-included offense of second-degree murder are: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification. *People v. Mendoza*, 664 N.W.2d 685, 689 (Mich. 2003). Malice is defined as "an intent to commit an unjustified and inexcusable killing[,]" *id.* at 691 (citation omitted), <u>or</u> "the wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Werner*, 659 N.W.2d 688, 692 (Mich. Ct. App. 2002) (internal quotation marks and citation omitted). Williams repeatedly denies any intent to kill the victim, and the prosecutor agrees that Williams did not intend to kill anyone. However, Michigan law does not require Williams to have the specific intent to kill in order to satisfy the intent element of second-degree murder. Here, Williams admits to planning the robbery with the shooter, a Davell Johnson. He admits to fleeing with Johnson, who had taken the drugs from the victim after the shooting. Williams never claimed that he tried to intervene to stop the shooting, despite "panicking" during the robbery or trying to make Johnson gain control of himself. Williams also never denies knowing his accomplice had a gun. Williams's protestation that he was "guilty of setting Dan up with some

fools that basically don't know the meaning of life" indicated that Williams used his friendship with the victim to render the victim vulnerable to the robbery. Unfortunately for Williams, the required element of malice is established by his admission that he planned an armed robbery, thereby creating a high risk of violence and harm to the victim. *See Werner, supra.* These facts, as admitted by Williams and recited by the trial court, establish the factual basis for the plea of guilty to second-degree murder. Accordingly, Williams's plea was knowingly and voluntarily made.

IV.

For all of the foregoing reasons, we REVERSE the district court's grant of habeas relief.