NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0241n.06

No. 23-1312

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 05, 2024
KELLY L. STEPHENS, Clerk

NICHOLAS MASLONKA,

    Petitioner-Appellant,

v.

MATT MACAULEY,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: BATCHELDER, McKEAGUE, and GRIFFIN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. This is our third time resolving an appeal arising from Nicholas Maslonka's habeas petition. The first time, we reversed the district court's judgment granting Maslonka's habeas petition because we found that even if his trial counsel were constitutionally deficient during the plea-bargaining stage, such a deficiency could not have prejudiced him. *Maslonka v. Hoffner* (*Maslonka I*), 900 F.3d 269, 273–74 (6th Cir. 2018). The second time, we instructed the district court that our remand instructions should have allowed it to evaluate Maslonka's remaining habeas-petition claims. *Maslonka v. Hoffner* (*Maslonka II*), No. 21-2929, 2023 WL 1463354, at *2 (6th Cir. Feb. 2, 2023). Now, Maslonka appeals the district court's judgment denying his involuntary-plea claim and his ineffective-assistance-of-trial-counsel claim. Because Maslonka has not shown he is entitled to relief, we affirm the district court's judgment.

## I.

We recite here only the facts necessary to resolve this appeal.[1] In December 2008, the State of Michigan arrested Maslonka and charged him with committing armed robbery after having committed three prior felonies.[2] The day the state court was to empanel a capital petit jury, and in exchange for the state's dropping the habitual-fourth-offender enhancement, Maslonka pleaded guilty to committing an armed robbery after having committed two prior felonies. The state trial court conducted a plea colloquy to ensure that Maslonka knowingly and intentionally chose to plead guilty.

Maslonka answered all the trial court's questions in a way that satisfied it that Maslonka was knowingly and intentionally pleading guilty. The trial court asked Maslonka whether he had discussed his case with his attorney. Maslonka responded that he had. The trial court asked whether Maslonka was satisfied with his attorney's advice and services. Maslonka answered in the affirmative. The trial court asked Maslonka whether his attorney "explained to you the nature of the charge to your satisfaction?" Maslonka responded by saying, "Yes." Finally, the trial court asked Maslonka to explain the facts underlying his conduct. Maslonka admitted that "I went to Bank of America, I wrote a letter stating that I had a gun and I needed money, I went in and handed it to the teller, she gave m[e] the money, I left. That's pretty much it." After confirming that Maslonka's attorney was satisfied with the factual basis of his plea and the existence of two prior felony convictions, the trial court found that Maslonka's plea "is knowing, freely and voluntarily made," and that "the elements of the offense to which [Maslonka] has pled guilty have been made

---

[1] Interested readers can find the full factual background and procedural history detailed in our prior opinions. *See Maslonka I*, 900 F.3d at 274–76; *Maslonka II*, 2023 WL 1463354, at \*1.

[2] This is referred to as being charged "as [a] habitual fourth" offender because, if proven, it would be the fourth felony.

out by his own statements in open court." Based on the colloquy, the trial court accepted Maslonka's guilty plea, entered judgment, and sentenced him. The state appeals court affirmed. *See Maslonka I*, 900 F.3d at 275.

Fast forward to today. In his federal habeas petition, Maslonka alleges that his plea was not knowing or voluntary and that his trial attorney was ineffective for failing to explain to him the elements of the charge against him. The district court held an evidentiary hearing,[3] during which Maslonka stated that he did not remember whether he received a copy of the criminal complaint against him before his bond hearing. Maslonka recalled that at his arraignment he learned the nature of the charges against him even though he did not receive a copy of the complaint. Maslonka said that, although his attorney at one point discussed with him in detail the state sentencing guidelines, he did not remember his attorney's visiting him much between the trial date and the hearing at which that date was set. But Maslonka insists that, shortly before the trial was set to begin, his attorney explained to him that he would not prevail at trial. Although he does not recall any other discussions about his trial, Maslonka stated that "[t]here could have been" because he had trouble recalling the exact events eight years later. He does not recall exactly what he and his attorney discussed, but he remembers that she told him to think about whether he should go to trial or plead guilty. Despite admitting to his not remembering the contents of his discussions with his trial attorney, Maslonka claimed that he never discussed with his attorney the elements of the offense, the rights he would waive by pleading guilty, or the charging documents against him. However, he stated that he was satisfied with his trial attorney's assistance at the time he pleaded guilty.

---

[3] The district court held an evidentiary hearing to determine whether Maslonka's trial attorney rendered deficient performance. *See Maslonka I*, 900 F.3d at 275.

At the same hearing, Maslonka's trial attorney testified that, although she did not specifically remember giving Maslonka a copy of the charges against him, she is certain that she did because she always gives her clients a copy of the charges against them.[4] She also testified that she had informed Maslonka that "there was not too much merit" to his case to support taking it to trial.

The district court denied Maslonka's habeas petition. It determined that Maslonka did not present evidence that overcame "the presumption that his attorney adequately explained the charges to him." The district court also noted that the factual basis of Maslonka's plea showed that he understood the elements of the charge against him. His ineffective-assistance-of-counsel claims required Maslonka to show that he was prejudiced because, but for the ineffective assistance, he would have insisted on going to trial instead of pleading guilty. The district court found no prejudice here because, "[o]ther than his self-serving statement," Maslonka "has offered no evidence to this Court that he has a meritorious defense to the charges."

Maslonka appeals the district court's judgment.

## II.

As we previously established, this is an unusual case in which the State has waived any claim of procedural default. *Maslonka I*, 900 F.3d at 276–77 & n.1. Consequently, we have not applied the "deferential standards" established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Id.* (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)). Instead, we will simply review the district court's legal conclusions de novo and its factual findings for clear error. *See Torres v. MacLaren*, 798 F. App'x 916, 919 (6th Cir. 2020) (citing *Maslonka I*, 900 F.3d at 278).

---

[4] Maslonka's trial attorney told the district court that she had approximately thirty criminal cases at any given time and a practice that consisted mainly of state capital cases.

A factual finding is "clearly erroneous" when, even though some evidence supports it, we are "left with the definite and firm conviction that a mistake has been committed." *Maslonka I*, 900 F.3d at 278 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).[5]

A guilty plea is "constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). For a plea to satisfy due process, the defendant must receive "real notice of the true nature of the charge against him." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (citation omitted). This means that when a defendant "pleads guilty to a crime without having been informed of the crime's elements," the defendant's due process right "is not met and the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Even so, the Supreme Court "ha[s] never held that the judge must himself explain the elements of each charge to the defendant on the record." *Id.* Instead, due process is satisfied when "the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id.* And even when there is no such "express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson*, 426 U.S. at 647; *see also Williams v. Wolfenbarger*, 513 F. App'x 466, 470 (6th Cir. 2013) (accepting guilty plea as knowing when admitted facts established each element).

---

[5] The State cites *Moss v. Miniard*, 62 F.4th 1002, 1008 (6th Cir. 2023), as holding that we review de novo factual determinations based on reviewing transcripts. The case *Moss* cites states that we review de novo factual determinations "'based on [the district court's] review of trial transcripts and other court records.'" *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006) (quoting *Mackey v. Russell*, 148 F. App'x 355, 359 (6th Cir. 2005)). But the case on which *Dando* and *Mackey* rely actually states that we review de novo factual findings "based on a transcript from the petitioner's state court trial" because the district court in that situation "makes 'no credibility determination or other apparent finding of fact.'" *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (citation omitted). So the transcripts to which the *Wolfe* line of cases refer consist of the state trial records.

We evaluate ineffective-assistance-of-counsel claims using a two-prong test. To succeed, a petitioner must show (1) that defense counsel's performance was deficient, and (2) that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the plea context, the second prong is met when the petitioner demonstrates "'a reasonable probability that,'" without defense counsel's deficient performance, "'he would not have pleaded guilty and would have insisted on going to trial.'" *Premo v. Moore*, 562 U.S. 115, 129 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). This inquiry requires us to examine the merits of the petitioner's claim that he is innocent or has a meritorious defense to the crime charged. *Maples v. Stegall*, 340 F.3d 433, 440 (6th Cir. 2003). This inquiry is objective, not subjective, which means it requires the petitioner to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

### III.

Maslonka pursues two claims as to why he is entitled to habeas relief: first, his guilty plea was not knowing because his attorney never explained to him the elements of the offense to which he pleaded guilty, and second, his counsel rendered deficient performance that prejudiced him because he had a meritorious defense to the charges at trial. We take each argument in turn.

Consider first Maslonka's claim that he pleaded guilty to armed robbery without knowing the elements of that offense. As proof, he presents his evidentiary-hearing testimony stating that his trial attorney never explained to him the elements of armed robbery. And he tries to discredit his former attorney's testimony to the contrary by noting that even though she stated that she "always" provided a copy of the charging document to her clients, she did not specifically remember giving a copy to Maslonka eight years earlier. On appeal, Maslonka now claims that he told the district court that his trial attorney explained the charges against him—and that he was

satisfied with her counsel—because she threatened that he would not receive credit for cooperating if he complained about her.

We hold that the record shows otherwise.[6] Take the state-court plea transcript first. The state court asked Maslonka three times about the advice his defense attorney provided him. First, the state court asked him whether he discussed the armed-robbery charge with her. Maslonka said he did. Then the state court asked whether Maslonka was satisfied with her legal advice and services. Maslonka said he was. Finally, the state court asked Maslonka whether his attorney had "explained to [him] the nature of the charge to your satisfaction." Once again, Maslonka responded in the affirmative. These reassurances are sufficient to establish the presumption that defense counsel informed Maslonka of the nature and elements of the charges against him. *See Henderson*, 426 U.S. at 647. To find otherwise would be tantamount to requiring trial courts to themselves explain the elements of each charge to the defendant on the record—a standard the Supreme Court explicitly rejected. *See Bradshaw*, 545 U.S. at 183 (citing *Henderson*, 426 U.S. at 647).

Moreover, Maslonka's professed factual basis for pleading guilty buttresses the conclusion that he was adequately informed of the nature of the charges against him. When the state court asked for the factual basis for his guilty plea, Maslonka explained, "I went to Bank of America, I wrote a letter stating that I had a gun and I needed money, I went in and handed it to the teller, she gave m[e] the money, I left. That's pretty much it." The state court then confirmed that the prosecutor and defense counsel were satisfied with the factual basis of Maslonka's plea. It also confirmed that both were satisfied that it complied with the appropriate state-court rule for

---

[6] Although the district court ruled that Maslonka presented "no evidence to overcome the presumption that his attorney adequately explained the charges to him," we think it is more accurate to say that Maslonka has presented *insufficient* evidence to overcome that presumption.

accepting guilty pleas.[7] The state court then stated that Maslonka's guilty plea was "knowing, freely and voluntarily made," and that the "elements of the offense to which [Maslonka] has pled guilty have been made out by his own statements in open court." The detailed colloquy conducted by the state court combined with its explicit findings assure us that Maslonka's guilty plea was voluntarily and intelligently given. *See Bradshaw*, 545 U.S. at 183; *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1999); *Williams*, 513 F. App'x at 470.

Of course, Maslonka still needs to contend with his former defense counsel's testimony too. And even though his defense counsel explained that she did not explicitly remember her communications with him, her testimony is understandable because she was asked about a specific case eight years later when she testified to carrying thirty cases—mostly capital cases—at any given time. At any rate, her testimony flatly contradicts Maslonka's in a number of ways. She unequivocally denied that Maslonka ever expressed dissatisfaction with her representation, and she said that if he had done so, she would have withdrawn and asked the court to appoint a new attorney. She also denied ever talking to her clients in the coarse way that Maslonka claimed she did.

Overall, we need not credit Maslonka's self-serving statement when it is contradicted by the record. *See, e.g.*, *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (collecting out-of-circuit cases and holding the same). The state-court record and testimony from Maslonka's former defense counsel assure us that he entered his guilty plea knowingly and intelligently. For this reason, his first claim fails.[8]

---

[7] *See* Mich. Ct. R. 6.302.

[8] To the extent Maslonka argues that he did not knowingly and intelligently plead guilty because he did not actually commit an armed robbery, we deal with that argument alongside his ineffective-assistance-of-counsel claim.

We next tackle Maslonka's ineffective-assistance-of-counsel claim. As we did during an earlier appeal, we will assume that his defense counsel rendered constitutionally inadequate performance. *Maslonka I*, 900 F.3d at 281. So the remaining burden on Maslonka is to prove that, without his counsel's deficient performance, it would have been rational for him to reject the plea bargain and to instead go to trial. This, he cannot do.

Maslonka argues that it would have been rational for him to insist upon going to trial because "there was no proof of an assault or that he actually put the teller in fear." But the chief authority on which he relies does not give him the support he thinks it does. In *People v. Harris*, the Michigan Court of Appeals reversed a conviction for unarmed robbery based on insufficient evidence. No. 267333, 2007 WL 1989454 (Mich. Ct. App. July 10, 2007) (per curiam). In *Harris*, a taxi driver refused to transport a passenger without receiving payment up front. *Id.* at *1. During the subsequent argument, the defendant threatened to "put a cap in [her]" the next time he saw her. *Id.* The defendant then took money from the cab's console and left. *Id.* At trial, the driver testified that she "was not threatened" by the defendant because she thought it was an "empty threat." *Id.* at *1–2. She also was not concerned that the defendant had any weapons. *Id.* Importantly, the Michigan Court of Appeals noted that the driver "was not induced to part with her property out of fear"—in fact, the defendant never even "requested" the money or asked the driver "to comply with his request to avoid further injury." *Id.* at *2. The defendant's taking of the money was unexpected and spur of the moment. *Id.*

The facts in *Harris* are a marked contrast to the facts to which Maslonka admitted. Maslonka did not threaten to shoot the Bank of America teller the next time he happened to see her; he stated that he had a gun, which is an implicit immediate threat of death or serious bodily harm. *See, e.g.*, *United States v. Sanders*, No. 22-4051, 2024 WL 21573, at *5 (6th Cir. Jan. 2,

2024) (citing *United States v. Clark*, 294 F.3d 791, 795 (6th Cir. 2002)). Maslonka has no evidence that the teller thought his threat was an empty one; instead, the teller complied with his demand and gave him the money. **[*Id.*]** And Maslonka's armed robbery wasn't spur of the moment; he went into the bank with a letter stating that he had a gun and needed money. In essence, *Harris* involves someone who made a general threat and then subsequently (and unexpectedly) took money from that person. Maslonka, by contrast, went into a bank with a letter stating that he had a gun and needed money, causing sufficient fear in the teller that she complied with his threat.

The facts to which Maslonka admitted during his plea hearing sufficiently establish that he committed the crime of armed robbery. It would not have been rational for him to insist on going to trial in the blind hope that the bank teller who handed him money would say she did not take his threat seriously. Because Maslonka cannot show prejudice even if we assume that his attorney rendered deficient performance, he is not entitled to habeas relief.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.